*Mayor and City Council of Baltimore v. Thornton Mellon, LLC, et al.*, No. 6, September Term, 2021, Opinion by Booth, J.

**TAX SALES—FEE SIMPLE TITLE CONVEYED BY DEED.** Under the tax sale statute, Title 14, Subtitle 8 of the Tax-Property Article of the Maryland Code (1985, 2019 Rep. Vol., 2021 Supp.) ("TP"), fee simple legal title to real property sold at a tax sale vests in the certificate holder upon the collector's execution and delivery of the deed. Upon the entry of the circuit court's judgment foreclosing the right of redemption, the certificate holder acquires an equitable title, or the right to acquire legal title, which may be exercised by satisfying the statutory conditions necessary for a conveyance of fee simple title by deed.

**TAX SALES—ASSIGNMENT OF TAX SALE CERTIFICATE.** The tax sale statute provides that the certificate is freely assignable under TP § 14-821, and there is nothing in the statute that evidences the Legislature's intent to extinguish the certificate or limit its assignment at the time the judgment is entered. Until fee simple title is conveyed by a deed, the tax sale certificate is freely assignable.

**JUDGMENTS—ASSIGNABILITY.** The judgment foreclosing the right of redemption is assignable. The judgment grants the plaintiff, its heirs, successors and assigns, the right to acquire legal title to property upon the satisfaction of the payment of the purchase price, and post-judgment taxes, penalties, and interest. The judgment is a chose in action, which may be validly assigned. There is nothing in the tax sale statute that imposes a prohibition on the assignment of the judgment.

**CIRCUIT COURT'S REVISORY POWER OVER ITS JUDGMENT.** Even if the Court had not concluded that the certificate of sale or judgment were assignable, the Court would nonetheless uphold the circuit court's order in this case, under the circuit court's broad revisory power over its judgment.

IN THE COURT OF APPEALS

OF MARYLAND

No. 6

September Term, 2021

MAYOR AND CITY COUNCIL OF
BALTIMORE

v.

THORNTON MELLON, LLC, et al.

*Getty, C.J.
*McDonald
Watts
Hotten
Booth
Biran
Battaglia, Lynne A.
(Senior Judge, Specially Assigned)

JJ.

Opinion by Booth, J.
Watts, Biran and McDonald, JJ., dissent.

Filed: April 28, 2022

*Getty, C.J., and McDonald, J. now Senior
Judges, participated in the hearing and
conference of this case while active members of
this Court. After being recalled Pursuant to MD
Constitution, Article IV, Section 3A, both
participated in the decision and adoption of this
opinion.



Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.

Suzanne C. Johnson, Clerk

In this case, we must determine the moment when fee simple legal title vests in real property that has been sold at a tax sale under the provisions of the Maryland tax sale statute, which is set forth in Title 14, Subtitle 8, of the Tax-Property Article of the Maryland Code ("TP") (1985, 2019 Repl. Vol, 2021 Supp.). The issue arises in the context of the Baltimore City Director of Finance's ("Director") refusal to issue a tax sale deed to Ty Webb, LLC ("Ty Webb"), the assignee of the tax sale purchaser, Thornton Mellon, LLC ("Thornton Mellon") following the entry of a judgment foreclosing the right of redemption ("judgment") in connection with a tax sale proceeding pending in the Circuit Court for Baltimore City. On July 11, 2019—one day after the circuit court entered the judgment— Thornton Mellon executed an assignment purporting to assign to Ty Webb its interest in the tax sale certificate and the judgment. Thornton Mellon prepared a tax deed, and presented the deed, and the assignment to the Director, and requested that the deed be executed to Ty Webb, as the assignee. The Director refused, asserting that the assignment was invalid because it was executed after the entry of the judgment.

After the Director refused to execute the deed, Thornton Mellon filed a notice of substitution of parties in the circuit court proceeding, substituting its interest in the action as plaintiff for its assignee, Ty Webb. As the substitute plaintiff, Ty Webb filed a motion requesting an order directing the City to issue a tax sale deed to Ty Webb. The Mayor and City Council of Baltimore (the "City") objected to Ty Webb's motion. The City argued, among other things, that under TP § 14-844(b), the circuit court's entry of a judgment foreclosing the right of redemption in a tax sale proceeding vests fee simple title in the certificate holder, thereby extinguishing the certificate of sale. The City asserted that the

only way for Thornton Mellon to convey its interest in the property to Ty Webb was for Thornton Mellon to first take legal title by deed, and then convey its interest by a second deed to Ty Webb. The circuit court rejected the City's argument, determining that there was nothing in the tax sale statute to indicate that the Legislature intended to limit the assignment of a certificate of sale to the period prior to the entry of judgment. The circuit court concluded that the certificate of sale and the judgment were assignable and granted Ty Webb's motion by directing the City to execute the tax deed in favor of Ty Webb as assignee.

After the City noted an appeal, the Court of Special Appeals affirmed the judgment of the circuit court. *Mayor and City of Baltimore v. Thornton Mellon, LLC*, 249 Md. App. 231 (2021) ("*Thornton Mellon*"). The City petitioned this Court for a writ of *certiorari*, which we granted to consider the following question, which we have consolidated and rephrased as follows:[1]

---

[1] The City's petition requested that we answer the following questions:

Did the Court of Special Appeals err in affirming an order requiring the City to issue a tax sale deed to Ty Webb LLC rather than the tax sale purchaser, Thornton Mellon LLC, when Thornton Mellon LLC waited until after the circuit court's final decree to purport to assign its certificate of sale and the judgement foreclosing the right of redemption to Ty Webb LLC, and the purported assignment was neither docketed as a separate filing nor recorded photographically by the clerk but merely attached as an exhibit to a motion for an order directing the City to issue a tax sale deed?

1. Is a tax sale certificate no longer assignable once a court enters judgment foreclosing the right of redemption?

2. Assuming, *arguendo*, that a tax sale certificate is assignable after foreclosure, was the purported assignment here nonetheless invalid for

2

Did the circuit court err in ordering the City of Baltimore to issue a tax sale deed to the tax sale certificate holder's assignee when the certificate holder executed the assignment one day after the entry of the court's order foreclosing the right of redemption?

For the reasons set forth below, we answer the question in the negative and affirm the judgment of the circuit court.

## I

### Factual Background and Procedural History

On May 15, 2017, Thornton Mellon was the successful bidder at a tax sale involving certain property located at 812 Wedgewood Road in Baltimore ("the property"). On that same day, the Director issued Thornton Mellon a tax sale certificate ("certificate"), which contained the following information pertaining to the sale in question. First, the certificate reflected that the total purchase price for the property was $90,309. Of the total price, the amount due at the time of the issuance of the certificate was $5,775.28, which was the "total amount of taxes and other municipal liens due on the property at the time of the sale, together with interest and penalties thereon, and expenses incurred in making the sale." The certificate noted that the property was "subject to redemption," and described the statutory amount that would be refunded to the certificate holder if the property was

---

failure to comply with the provisions of law relating to the short assignment of mortgages?

3. Is a judgment foreclosing the right of redemption non-assignable?

4. Assuming, *arguendo*, that a foreclosure judgment is assignable, must the assignment be filed and docketed in the circuit court, not merely attached as an exhibit to a motion, before the assignee can enforce the judgment in the assignee's name?

3

redeemed by the owner. The certificate stated that the "balance due on account of the purchase price and all taxes, and other municipal liens, together with interest and penalties on them accruing subsequent to the date of sale, must be paid to the Collector before a deed can be delivered to the purchaser." The certificate specified that the holder could bring a proceeding to foreclose the owner's right of redemption after the expiration of the owner's statutory period for redeeming the property. Finally, the certificate reflected that it would be void unless a proceeding was brought to foreclose the owner's right of redemption within two years of the date of the certificate.

On February 26, 2018, after the property owner failed to redeem the property within the statutory redemption period, Thornton Mellon filed a complaint to foreclose the right of redemption. On July 10, 2019, the circuit court entered the judgment, titled "Judgment Foreclosing Right of Redemption." The judgment contained the language required under the applicable provisions of the tax sale statute necessary to foreclose the right of redemption. *See* TP §§ 14-844, 14-847(a). First, the judgment recited the circuit court's finding that "all [d]efendants were personally served or were notified in accordance with" the applicable provisions of the Tax-Property Article, that the applicable notice of publication had been issued, and that no redemption had been made by the property owner. Second—and apropos of its title—the document entered judgment in favor of Thornton Mellon foreclosing the right of redemption in the property. Third, the judgment:

> **ORDERED** that Plaintiff is vested with an absolute and indefeasible **fee simple** title, free and clear of all alienations and descents of the property occurring before the date of the judgment and encumbrances on the property, except taxes and municipal liens that have accrued after the date of the sale

4

and easements of record and any other easement to which the property is subject that may be observed by an inspection of the property[.]

Fourth, the judgment included the following directives to the Director and the Supervisor of Assessments as required by TP § 14-847(a):

> **ORDERED** that the Director of Finance shall execute and deliver a Deed to the Plaintiff, his successors and assigns, in accordance with the provisions of §§ 14-831 and 14-847 of the Tax-Property Article of the Maryland Code Annotated; and it is further

> **ORDERED** that the Supervisor of Assessments of Baltimore City shall enroll Plaintiff as the **fee simple** owner of the above-described property.

On July 11, 2019—the day after the judgment was entered—Thornton Mellon executed a one-page assignment that purported to assign the certificate and judgment to Ty Webb. The assignment, titled "Assignment of Certificate of Tax Sale & Order Foreclosing Right of Redemption" stated as follows:

> In consideration of the sum of $1.00 dollars, I, for Thornton Mellon LLC do hereby sell, assign, transfer and set over to Ty Webb LLC, and their heirs, executors, administrators and assigns, the written Certificate of Tax Sale with respect to the property at 812 WEDGEWOOD ROAD, BALTIMORE, MD 21229-1224, Parcel ID 28-05-7993B-028, attached hereto and the Judgment Foreclosing Right of Redemption issued with respect to the Property and all my right, title and interest in or to the real estate described therein, to have and to hold the same to myself, his heirs, executors, administrators and assigns, to his and their sole use, benefit, and behoof forever. The Tax Sale Deed with respect to the Property should be issued in the name of Ty Webb LLC.

In accordance with the requirements of TP §14-847(b), Thornton Mellon prepared and submitted to the Director a tax sale deed for the property. The tax sale deed reflected that the property was being conveyed from the Director to Ty Webb, as assignee of Thornton Mellon, and included standard recitals typical in tax sale deeds—describing the

5

tax sale proceeding, including the parties' names and case number, the property description, and the tax account number for the property—as well as a recital reflecting Thornton Mellon's assignment of its interest in the property to Ty Webb.

At this point, the dispute arose between the parties. The City refused to execute the tax sale deed because it reflected Thornton Mellon's assignment of its interest to Ty Webb, which the City contended was invalid. Specifically, although the City acknowledges that tax sale certificates are generally assignable, the City's position is that the particular assignment to Ty Webb was invalid because it was executed one day after the entry of the judgment foreclosing the right of redemption. Upon the entry of the judgment, the City's view is that the only way that Thornton Mellon can effectuate a transfer of its interest in the property to Ty Webb is by a two-deed transaction: first, by taking title to the property in a tax sale deed as the grantee; and second, by a deed of conveyance from Thornton Mellon, as the grantor, to Ty Webb as the grantee.[2] In other words, because Thornton Mellon had not completed the assignment to Ty Webb, and Ty Webb had not been substituted as a party in the tax sale proceeding prior to the entry of the judgment foreclosing the right of redemption, the City contended that the assignment was invalid, and refused to execute the tax sale deed conveying legal title to the property to Ty Webb.

---

[2] The City's reason for its statutory interpretation is no secret—if the Court agrees with the City, the City can collect revenue from transfer and recordation taxes on *two* deed transfers instead of one. In its brief, the City argues that there are "public policy reasons" to support its interpretation and points out that if Thornton Mellon were to sell the property for the amount it bid at the tax sale—$90,309—that sale would generate $2,259.63 in revenue to the City in recordation and transfer taxes. There is no dispute that Ty Webb will have to pay these fees in connection with the Director's conveyance of fee simple title to the property by deed. The City wants to collect them on two separate conveyances.

6

After the City refused to execute the deed, on July 31, 2019, Thornton Mellon filed a notice of substitution in the tax sale case, stating that its interest in the property had been assigned to Ty Webb and requesting that Ty Webb be substituted as plaintiff. On that same day, Ty Webb, as substitute plaintiff, filed a "Motion for an Order Directing the City to Issue a Tax Deed to Assignee." In the motion, Ty Webb explained that the circuit court had issued a judgment foreclosing the right of redemption on July 10, 2019, and that the following day, Thornton Mellon had assigned its interest in the property and the judgment to Ty Webb. Ty Webb attached to its motion a copy of the assignment and the draft tax sale deed. Ty Webb requested that the court enter an order directing the City to comply with the court's judgment by issuing a deed to Ty Webb, as the assignee and substitute plaintiff.

The City responded by filing two motions: a Motion to Strike, and a Motion to Strike, or in the Alternative, Response to Motion for Order Directed to the City of Baltimore to Issue a Tax Deed to an Assignee. In the City's motions, the City argued that Thornton Mellon's attempt to substitute Ty Webb as the plaintiff did not comply with Maryland Rule 2-241[3] and that Ty Webb lacked standing to file its motion. The City asserted that: (1) the tax sale certificate was not assignable after the entry of the judgment;

---

[3] Md. Rule 2-241(a) allows a person to be substituted for a party who:

(1) dies, if the action survives,
(2) becomes incompetent,
(3) transfers an interest in an action, whether voluntarily or involuntarily,
(4) if a corporation, dissolves, forfeits its charter, merges, or consolidates,
(5) if a public officer, ceases to hold office, or
(6) if a guardian, personal representative, receiver, or trustee, resigns, is removed, or dies.

(2) the judgment itself is not assignable; and (3) upon the entry of the judgment, the only manner by which Thornton Mellon could convey or assign its interest in the property was to first take title to the property by a deed, and then to execute a deed conveying its interest to Ty Webb.

After a hearing, the circuit court issued a memorandum opinion and order. The circuit court determined that the plain language of TP § 14-821 does not limit the assignability of either a tax sale certificate or a judgment foreclosing the right of redemption. The circuit court also concluded that, even if the City was correct that the tax sale certificate was only assignable up until the entry of the judgment, the judgment itself was assignable as a chose in action.

The City appealed the circuit court's decision to the Court of Special Appeals. The intermediate appellate court affirmed the decision of the circuit court. *Thornton Mellon*, 249 Md. App. at 231. The Court of Special Appeals pointed out that the circuit court has general revisory power and control over a judgment for a period of thirty days after its entry, including a final judgment foreclosing a right of redemption. *Id.* at 240. The Court of Special Appeals determined that Thornton Mellon's filings "while not captioned as such, were essentially motions to revise the original judgment and may be treated as such despite their caption." *Id.* at 241.

The Court of Special Appeals also examined the plain language of the tax sale statute and held that it unambiguously and expressly permits the assignment of a certificate of tax sale. *Id.* The court rejected the City's argument that the judgment foreclosing the right of redemption renders the tax sale certificate a "legal nullity" having no value,

8

pointing out that after the entry of judgment, "several additional steps are required to finalize the delivery of the deed[,]" including the certificate holder's payment of the purchase price, accrued taxes and interest, and penalties. *Id.* at 243. The intermediate appellate court also noted that these additional steps are expressly required under the statute to be undertaken by the "holder of the certificate of sale." *Id.* at 244 (quoting TP § 14-847(b)). The Court of Special Appeals reasoned that the General Assembly's references to the "certificate holder" in the sequence of steps following the entry of judgment is further evidence that the General Assembly did not intend to render the certificate of sale a "legal nullity" upon the entry of the judgment. *Id.* The Court of Special Appeals further determined that its interpretation of the tax sale statute was consistent with this Court's jurisprudence reflecting the long-standing principle that "legal title to land . . . does not pass, other than by operation of law, until a deed is properly executed and recorded." *Id.* (quoting *Kingsley v. Makay*, 253 Md. 24, 27–28 (1969)). The Court of Special Appeals concluded that because no deed had been executed and recorded in the name of Thornton Mellon, the assignment of the judgment and substitution of the parties was valid. The intermediate appellate court also noted that the language in the judgment itself reflected the assignability of the certificate and the judgment, pointing to the Director's authority to execute a deed to the Plaintiff, "his successors and assigns," which, in this case, was Ty Webb. *Id.* at 244. The intermediate appellate court agreed with the circuit court that the judgment foreclosing the right of redemption was also a chose in action, which was assignable. *Id.* at 244–45. Accordingly, the Court of Special Appeals affirmed the circuit

9

court's judgment. As we discuss below, we agree with the Court of Special Appeals' analysis in all respects.

## II

### Discussion

"Where an order involves an interpretation and application of Maryland constitutional, statutory or case law, our Court must determine whether the trial court's conclusions are 'legally correct' under a *de novo* standard of review." *Schisler v. State*, 394 Md. 519, 535 (2006). Inasmuch as the sole issue in this case involves an interpretation of the statutes and our case law governing the tax sale process, we conduct a *de novo* review of the matters raised herein.

As we mentioned above, the fundamental issue in this case turns on the moment when fee simple title to real property that is sold at a tax sale vests in a tax sale purchaser who holds a certificate of sale to the property. The City contends that, under the plain language of the tax sale statute, the circuit court's judgment that forecloses the right of redemption automatically vests fee simple title to the property in the certificate holder by operation of law and without any further action by the certificate holder or the tax collector. Although the City acknowledges that, under Maryland title conveyance law generally, legal title does not pass until a deed is executed and recorded, the City contends that the Legislature has created an exception to the general rule, whereby fee simple title is passed, as a matter of law, upon the entry of the *judgment* instead of a conveyance by deed. Under the City's theory, because the judgment transfers fee simple title and extinguishes all prior liens and encumbrances, the certificate holder's tax sale certificate

is extinguished, and is therefore, no longer assignable. Accordingly, the City posits that post-judgment, the tax sale purchaser—in this case, Thornton Mellon—may only convey its interest in the property by a fee simple deed under the general Maryland title conveyance statute, Md. Code Real Property Article (1974, 2015 Repl. Vol., 2021 Supp.) ("RP") § 3-101.

Thornton Mellon disagrees with the City's characterization of the judgment and asserts that the tax sale statute does not create a statutory exemption to Maryland's title conveyance law. Thornton Mellon points out that the statute requires that the certificate holder satisfy certain post-judgment conditions in order to obtain fee simple title by deed. Upon the performance of these conditions, Thornton Mellon notes that the collector is required to execute a deed to the certificate holder conveying fee simple title. Because the statute describes certain post-judgment conditions that the certificate holder must satisfy prior to obtaining fee simple title by deed, Thornton Mellon asserts that the entry of judgment creates equitable title, which ripens into legal title *only* upon the certificate holder's performance of the conditions and delivery of a deed. Thornton Mellon contends that its statutory interpretation is consistent with Maryland title conveyance law generally, as well as our case law describing the conveyance of legal title in the mortgage foreclosure context. According to Thornton Mellon, because legal title to the property does not transfer until the conveyance by deed, the certificate of sale—which evidences the certificate holder's lien interest in the property—is not extinguished by the judgment. Thornton Mellon points out that the tax sale statute explicitly provides for the assignment of tax sale certificates, and there is nothing in the plain language of the statute to indicate that the

11

General Assembly intended to restrict the free assignment of the tax sale certificate to the point in time prior to the entry of the judgment. Thornton Mellon also asserts that the judgment itself is assignable. Finally, Thornton Mellon notes that the circuit court has broad revisory power over its judgment, and the circuit court did not err in entering an order directing the City to execute the deed under the circumstances.

To determine the correctness of either party's position, we must necessarily quantify the *nature of the certificate holder's interest* in the property upon the entry of the judgment foreclosing the right of redemption. In other words, we must decide whether the City is correct that the judgment itself vests fee simple title to the certificate holder as a matter of law (thereby extinguishing all prior liens, including the tax sale certificate), *or* whether Thornton Mellon is correct that the judgment conveys an interest less than fee simple title, such as an equitable interest, and that legal title to the property passes by the deed after the certificate holder's performance of statutory conditions.

Before we turn to the tax sale statute, it is useful to discuss some basic real estate title and conveyance nomenclature under Maryland law. This background is helpful because some of the terms contained in the tax sale statute—such as "fee simple title" and "marketable title"—are defined by common law. Additionally, some of the general requirements for conveying legal title to property are contained in other provisions within the Maryland Code. As we will discuss later, when interpretating statutes that address the same subject matter, we endeavor to read those provisions consistently with one another.

### A. *General Real Estate Terms and Concepts Under Maryland Law for Conveying Fee Simple Title to Real Property*

We start with the principle that in Maryland, with limited exception,[4] the only means by which legal title to real property can transfer from one person to another is by recording a deed in the land records of the county in which the property is located. *See* RP § 3-101(a) ("[N]o estate of inheritance or freehold, . . . may pass or take effect unless the deed granting it is executed and recorded."); *Kingsley*, 253 Md. at 27 (observing that "legal title to land, of course, does not pass, other than by operation of law, until a deed is properly executed and recorded[]").

The concept of "legal title" to real property is distinct from "equitable title." While legal title is conveyed by a deed, equitable title arises in circumstances where an individual has *the right* to acquire legal title. *See* Black's Law Dictionary (11th ed. 2019) (defining

---

[4] RP § 3-101(a) recognizes that, in limited circumstances, legal title may pass "by operation of law." One example of how title passes "by operation of law" is where property is held as tenants by the entirety with rights of survivorship, and the decedent's title in property vests in his or her survivor by operation of law without the need for a new deed. *See* RP § 4-109(b) (providing that "[a]ny interest in property held by a husband and wife in tenancy by the entirety may be granted" and "[t]hese grants, regardless of when made, are ratified, confirmed, and declared valid as having created the type of ownership that the grant purports to grant[]"). Another example is an eminent domain proceeding. *See* Md. Rule 12-212(a) (providing that legal title is transferred by recording the trial court's inquisition in the land records); *see also* RP § 12-108(a) and (b) (stating that "[o]n payment of the judgment and costs by the plaintiff pursuant to the provisions of Title 12, Chapter 200 of the Maryland Rules, the plaintiff immediately shall become vested with the title, estate, or interest of the defendant in the condemned property" and "[t]he title acquired in a condemnation proceeding shall be an absolute or fee-simple title including the right, title, and interest of each of the defendants in the proceeding whose property has been condemned unless a different title is specified in the inquisition[]"); *and Dunne v. State,* 162 Md. 274, 284 (1932) (making clear, however, that title in eminent domain proceedings does not pass until just compensation is paid or secured to the defendant).

"equitable title" as "a title that indicates a beneficial interest in property and that gives the holder the right to acquire formal legal title[]"). When a purchaser enters into a real estate contract to purchase property, the purchaser acquires an equitable title, or the right to acquire property. *Kingsley*, 253 Md. at 24. The legal title to the property does not pass until a deed is properly executed and recorded. *Id.*

The Real Property Article of the Maryland Code sets forth the language to be included in a deed when a grantor conveys a fee simple interest in property to a grantee. RP § 4-202(a). Unless a contrary intention appears by express terms or is necessarily implied, every grant of land passes a fee simple estate. 6 Maryland Law Encyclopedia ("M.L.E."), *Conveyances* § 84; RP § 2-101 (stating that "[t]he word "'grant' [] in a deed, or any other words purporting to transfer the whole estate of the grantor, passes to the grantee the whole interest and estate of the grantor in the land mentioned in the deed unless a limitation or reservation shows, by implication or otherwise, a different intent[]").

A "fee simple" estate is defined as "being the broadest property interest allowed by law[.]" Black's Law Dictionary (11th ed. 2019); *see also* 1 Tiffany Real Prop. § 27 (3d ed. 1939 & Supp. 2021) ("[a]n estate in fee simple absolute is an estate in fee simple which is not subject to a special limitation, condition subsequent or an executory limitation.[]"). The owner of a fee simple estate has absolute and exclusive control and dominion over the property. *See Trustees of Sheppard & Enoch Pratt Hosp. v. Swift & Co.*, 178 Md. 200, 207 (1940) (where one holds "absolute and exclusive control over property," one has an estate in fee simple, no matter how acquired); *Arnd v. Lerch*, 162 Md. 318, 324 (1932) ("[a]n

estate in fee simple is one in which the tenant holds absolute and exclusive control and dominion over the property[]”).[5]

Another real estate term that is useful to discuss is the concept of "marketable title" to real property. As we will discuss in more detail, the Legislature has expressly directed that the tax sale statute be construed within the context of "the public policy of providing marketable title to property that is sold at tax sale[.]" TP § 14-832(2). "Whether title is marketable in a given case is a question for the court." *Coe v. Hays*, 105 Md. App. 778, 789 (1995) (citing *Berlin v. Caplan*, 211 Md. 333, 341 (1956) (additional citation omitted)). We have defined a "marketable title" as "a title without encumbrances and free from reasonable doubt as to any question of law or fact that may call it in question in the future and subject the purchase to the hazard of litigation." *Garner v. Union Trust Co. of Maryland*, 185 Md. 386, 389 (1945). Or stated another way, "marketable title" is

> a title which is free from encumbrances and any reasonable doubt as to its validity, and such as a reasonably intelligent person, who is well informed as to the facts and their legal bearings, and ready and willing to perform his contract, would be willing to accept in the exercise of ordinary business prudence. Accordingly[,] a marketable title must be so far free from defects as to enable the purchaser not only to hold the land in peace but also, if he wishes to sell it, to be reasonably sure that no flaw will appear to disturb its market value. However, a title, in order to be marketable, need not be free

---

[5] William Blackstone described the owner of a fee simple estate as having "*absolutum et directum dominion* [absolute and direct ownership]." 2 William Blackstone, *Commentaries on the Laws of England* 70 (1769). Or in other words, fee simple title is "an estate of [absolute] inheritance; being the highest and most extensive interest that a man can have in a feud" that is given to him and his heirs, "clear of any conditions, limitations or restrictions[.]" *Id.* at 71.

15

> from every conceivable technical criticism, but only from those possibilities of defect which are sufficient to raise a reasonable doubt.

*Sinclair v. Weber*, 204 Md. 324, 334 (1954).

We have "recognized that the term 'merchantable title' is synonymous with 'marketable title.'" *Garner*, 185 Md. at 389. Notably, "'a good and merchantable title' ordinarily means a title in fee simple[.]" *Arnd*, 162 Md. at 323. In contrast to fee simple title, we have also made it "clear that equitable title is not marketable, for in reality it is not a title at all, but merely a right to the legal title." *Garner,* 185 Md. at 390. At the opposite end of the spectrum from a property having "good record title" or "marketable title," is a property that has a *cloud* on its title. A "cloud on title" is defined as "[a] defect or potential defect in the owner's title to a piece of land arising from some claim or encumbrance such as a lien, an easement, or a court order." Black's Law Dictionary (11th ed. 2019).

Of course, some transfers of property are not undertaken willingly by the owner, such as in the case of a mortgage foreclosure or a tax sale—where the owner loses title to property arising from the nonpayment of a valid debt that constitutes a lien on the property. In the case of a tax sale, the Legislature has created an *in rem* process to transfer legal title to property via the tax sale statute that balances the due process rights of the property owner against the public policy of ensuring clear and marketable title to property that has been sold and transferred in connection with a tax sale proceeding. TP § 14-832.

### B. The Tax Sale Process

The tax sale process is set forth in Title 14, Subtitle 8, of the Maryland Tax-Property Article, and provides for the sale of real property by a local taxing authority when an owner

has failed to pay his or her property taxes. The unpaid property taxes become liens on the property until they are paid, and the county's tax collector is authorized to sell the property "in the county in which the collector[6] is elected or appointed on which the tax is in arrears." TP § 14-804(a)(1); TP § 14-808(a)(1).

*The Public Sale*

Notice of the proposed sale must be given to the owner at least 30 days before the property is advertised for sale, and it must state that if the owner does not pay the taxes within 30 days, the property will be sold. TP § 14-812. After the sale is properly advertised, the property is sold at public auction. TP § 14-817.

At the public sale, the purchaser pays the delinquent taxes due on the property and in exchange, is "given a certificate of sale which includes a description of the property, the amount for which the property was sold, and information as to the time in which an action to foreclose the owner's right of redemption must be brought." *Scheve v. Shudder*, 328 Md. 363, 370 (1992); TP § 14-820. It is important to note that, at the time of the tax sale, the tax sale purchaser does *not* pay the entire bid price. The purchaser pays the back taxes, and the rest of the bid remains on credit. TP § 14-818(a)(1)(i).[7] The purchaser then

---

[6] "A 'collector' is an 'officer of a county or municipal corporation who has a duty to collect or remit taxes.'" *Kona Properties, LLC v. W.D.B. Corp., Inc.*, 224 Md. App. 517 n.4 (2015) (quoting TP § 1-101(e)). "The Director of Finance is the collector for Baltimore City." *Id*.

[7] In this case, at the tax sale, Thornton Mellon's bid price was $90,309. At the time of the issuance of the certificate, it paid $5,775.28, leaving a balance of $84,533.72, which remained on credit. TP § 14-818(a)(1)(i). As explained in more detail herein, the balance is not required to be paid prior to the entry of the judgment foreclosing the owner's right of redemption but is required to be paid prior to the issuance of the deed from the collector.

17

receives a certificate of sale, which is freely assignable. TP §§ 14-820, 14-821.

Specifically, TP § 14-821(a) provides that:

> Except as provided in subsection (b) of this section,[8] any certificate of sale executed and delivered by the collector to the purchaser is assignable and an assignment of the certificate of sale vests in the assignee, or the legal representative of the assignee, all the right, title and interest of the original purchaser. The assignment of certificate of sale may be made in accordance with the provisions of law relating to the short assignment of mortgages.

The certificate of sale issued to the certificate holder is the documentary evidence of the certificate holder's lien on the property. *See* TP § 14-823 (stating that the "certificate of sale or assignment of the certificate of sale is presumptive evidence . . . of the title of the purchaser to the property described in the certificate of sale or assignment . . . ."); *Magraw v. Dillow*, 341 Md. 492, 505 (1996) (explaining that "the interest of a tax sale purchaser is that of a lien against the property, which, through the process of foreclosure, ripens into title[]") (cleaned up). In other words, the certificate is the presumptive evidence of the certificate holder's lien, or "inchoate right of ownership," *Magraw*, 341 Md. at 505. This gives the certificate holder the right to later institute a tax sale foreclosure proceeding to convert the holder's inchoate equitable interest into legal title.

---

TP § 14-818(a)(2) ("After the final decree has been passed foreclosing the right of redemption in any property, the collector may not execute or deliver a deed to any purchaser other than the governing body of a county until the balance of the purchase price has been paid in full, together with all taxes and interest and penalties accruing after the date of the sale.").

8 The sole exception in TP § 14-821(b) relates to limited auctions that are permitted by statute in Prince George's County pursuant to TP § 14-817(d), which are not applicable here.

*Property Owner's Right of Redemption*

After the tax sale, the property owner has a right of redemption, which lasts until it is foreclosed in a court proceeding. TP § 14-827. To redeem the property, the owner must pay the collector, among other things, the amount already paid by the purchaser at the tax sale, plus interest at the applicable rate provided in TP § 14-820(b) from the date of the tax sale to the date of redemption. TP § 14-828. If the property is redeemed, the certificate holder, upon surrendering the certificate, receives the redemption amount paid to the collector, excluding the taxes. *Id.*

TP § 14-820(b) sets the statutory redemption interest rate for each county and Baltimore City, unless the local subdivision sets something different. As Chief Judge Murphy noted in *Fish Market Nominee Corp. v. G.A.A., Inc.*, "[l]ocal subdivisions often set the rate higher than rates given on ordinary investments." 337 Md. 1, 5 (1994) ("*Fish Market*"). For example, Baltimore City has set the redemption interest rate at 18% per year. Baltimore City Code Art. 28, § 16. "This high rate of return encourages potential tax sale purchasers to invest in property despite the fact that the property is subject to a right of redemption." *Fish Market*, 337 Md. at 5.

After waiting six months from the date of sale, the certificate holder can file a complaint to foreclose the owner's right of redemption. TP § 14-833(a).[9] The certificate is "void unless a proceeding to foreclose the right of redemption is filed within 2 years of

---

[9] For owner-occupied properties in Baltimore City, unless a statutory exception applies, the holder must wait nine months prior to filing a complaint to foreclose the property owner's right of redemption. TP § 14-833.

the date of the certificate of sale." TP § 14-833(c)(1). We have described the two-year time frame for filing a complaint as "effectively placing a statute of limitations on actions to foreclose the right of redemption." *Fish Market*, 337 Md. at 5.

*In Rem Proceeding to Foreclose Right of Redemption and to Transfer Fee Simple Title to the Certificate Holder*

Because the transfer of legal title to the property from the owner to the certificate holder is not a voluntary one, the tax sale statute sets forth an *in rem* proceeding by which the interests of the owner and any other persons having an interest in the property are extinguished, and a deed conveying fee simple title is issued by the collector to the certificate holder upon the successful completion of all the statutory steps in the process. The General Assembly has recognized the importance of ensuring that properties that are sold at a tax sale emerge from the process with marketable title, by directing that the statute "shall be construed to ensure a balance between: (1) the due process and redemption rights of persons that own or have an interest in property sold at a tax sale; and (2) the public policy of providing marketable title to property that is sold at a tax sale through the foreclosure of the right to redemption." TP § 14-832.[10]

The Legislature has conferred upon the circuit court equitable "jurisdiction to give complete relief under this subtitle," over property located within its county, "to bar all

---

[10] The Legislature's directive to construe tax sale statutes in a manner that ensures marketable title to properties subject to tax sale proceedings has been around for many decades. *See* 1943 Md. Laws ch. 761 § 89G (stating that the applicable provisions of the tax sale statute "shall be liberally construed as remedial legislation to encourage the foreclosure of rights of redemption by suits in the equity courts and for the decreeing of marketable titles to property sold by the Collector[]").

20

rights of redemption and to foreclose all alienations and descents of the property occurring before the judgment of the court[,]" including "all liens and encumbrances on the property," with the exception of "property taxes that arise after the date of the sale," including the authority "to order an absolute and indefeasible estate in fee simple or leasehold to be vested in the holder of the certificate of sale." TP § 14-834.

The statute provides that the "plaintiff in any action to foreclose the right of redemption shall be the holder of the certificate of sale." TP §14-836. The defendants are the record title holder, the owner of any leasehold title (if the property is subject to a ground rent),[11] any mortgagee or assignee of a mortgagee, the trustee under any deed of trust, the county where the property is located, and if appropriate, the State. TP § 14-836(b)(1). After the certificate holder files a complaint, the court issues summonses to all defendants and issues an order to publicize the foreclosure proceeding. TP §§ 14-839(a)(3), 14-840. Both the summonses and the publication state a date, no sooner than 60 days from the date of the publication order, by which anyone having an interest in the property must redeem it. TP § 14-840. The right of redemption continues throughout the proceeding until the court issues a final decree foreclosing the right of redemption. TP § 14-827. The complaint alleges an amount necessary for redemption; however, the court fixes the amount if it is disputed. TP §§ 14-829, 14-835(a)(7). If the owner or interested person entitled to redeem

---

[11] To ascertain the record title holder and any record title holder of a leasehold title if the property is subject to a ground rent, the certificate holder is required to perform a title search "in accordance with generally accepted standards of title examination of the land records of the county, of the records of the register of wills of the county, and of the records of the circuit court of the county." TP § 14-836(b)(i) and (ii).

the property does not do so by the dates stated in the summons and in the publication, the court issues a final judgment foreclosing the right of redemption.  TP § 14-844(a).

The Legislature has set forth certain statutory requirements for the final judgment entered by the circuit court, which are contained in two sections of the tax sale statute.  TP §§ 14-844, 14-847(a).  First, in TP § 14-844(a), the judgment extinguishes the rights of the defendants and other persons who have an interest in the property: the judgment is final and "conclusive on the defendants, their heirs, devisees, and personal representatives and they or any of their heirs, devisees, executors, administrators, assigns, or successors in right, title, or interest, and all defendants are bound by the judgment as if they had been named in the proceeding and personally served with process."  *Id.*  Second, in subsection TP § 14-844(b), if the court finds for the plaintiff:

> the judgment vests in the plaintiff an absolute and indefeasible title in fee simple in the property, free and clear of all alienations and descents of the property occurring before the date of the judgment and encumbrances on the property, except taxes that accrue after the date of sale and easements of record and any other easement that may be observed by an inspection of the property to which the property is subject.

However, the statutory requirements pertaining to the circuit court's entry of a judgment do not end there.  The statute also *requires* that the circuit court judgment include *two additional directives*, which are set forth in TP §14-847(a).  First, the statute requires that, "*the judgment of the court shall direct the collector to execute a deed to the holder of the certificate of sale in fee simple*" upon "payment to the collector of the balance of the purchase price, due on account of the purchase price of the property, together with all taxes and interest and penalties on the property that accrue after the date of sale."  TP § 14-847(a)

22

(emphasis added). Second, the statute specifies that "[t]he judgment shall direct the supervisor to enroll the holder of the certificate of sale in fee simple . . . as the owner of the property." *Id.*[12]

---

[12] As we noted in *Lippert v. Jung*, 366 Md. 221, 238–240 (2001), the taxing authority's power to sell property for non-payment of taxes has existed since the original grants from the Kings of England to the Lord Proprietors. The early tax sale statutes did not require court approval prior to the tax collector's conveyance following a sale. The power of sale vested in a collector was described as a "naked power, specially conferred by statute, to be exercised under a proceeding ex parte in its character, . . . the effect of which [was] to divest a citizen of his property without his consent[.]" *McMahon v. Crean*, 109 Md. 652, 665 (1909).

With the passage of the Acts of 1872, ch. 384, the General Assembly required the "collector to report the sale, together with all the proceedings had in relation therefore to the courts for confirmation[.]" The early statutes conferred upon the court a special and limited jurisdiction, to ratify the sale. Upon the final ratification of the sale, the Legislature gave the tax collector the authority to convey title to the property by executing a deed to the purchaser. *See e.g.*, Md. Code Art. 81 § 79 (1929).

Although there have been various revisions to the tax sale statutes since the Acts of 1872, the substance of the statutory provisions pertaining to the requirements of the judgment of foreclosure have remained unchanged. For example, the tax sale statute enacted by Chapter 761 of the 1943 Maryland Laws contained provisions that are substantively the same as Sections 14-844 and 14-846 of the current Tax-Property Article. Specifically, the Annotated Code of the Public General Laws of Maryland (1943), Article 81, § 90L provided as follows:

At the expiration of the time limited in the order of publication, and in the subpoena, the court shall pass its decree in the proceedings, in accordance with the general equity jurisdiction and practice of said court. The decree shall be final and conclusive upon the defendants, their heirs, devisees, and personal representatives and their or any of their heirs, devisees, executors, administrators, assigns or successors in right, title or interest, and all defendants shall be bound by the said decrees as if they had been named in the proceedings and personally served with process. If the Court shall find for the plaintiff, the decree shall vest in the plaintiff an absolute and indefeasible title in fee simple in the property, free and clear of all alienations and descents of the property occurring prior to the decree of Court as herein

23

Following entry of the judgment foreclosing the right of redemption, the tax sale statute imposes additional obligations on both the certificate holder and the tax collector. With respect to the certificate holder, once the court enters final judgment, the holder of the tax sale certificate "immediately becomes liable for the payment of all taxes due and payable after the judgment . . . . On the entry of judgment, the plaintiff shall pay the collector any surplus bid and all taxes together with interest and penalties on the taxes due on the property." TP § 14-844(d).[13] Second, the statute requires that the certificate holder prepare a deed. *See* TP § 14-847(b) ("[t]he deed shall be prepared by the holder of the certificate of sale or the attorney for the holder of the certificate of sale and all expenses

---

> provided and encumbrances thereon, except taxes accruing subsequent to the date of sale and public easements to which the property is subject . . . .

The language in Article 81, § 90O provided that:

> *The final decree of the court shall direct the Collector to prepare and execute a deed to the holder of the certificate of sale, in fee simple, or in leasehold, as the case may be, upon payment to the Collector of the balance of the purchase price, due on account of the purchase price of the property, together with all taxes and interest and penalties thereon accruing subsequent to the date of sale.* The Clerk of the Court in which the suit is instituted shall issue a certified copy of the decree of said Court and the Collector shall not be obligated to execute the deed provided for in this section until such certified copy of the decree is served upon him.

(Emphasis added). Similar language was included in the tax sale statute up through 1985, when the General Assembly implemented a general recodification of the tax sale statute, formerly Maryland Code Article 81, §§ 70 through 127. *Compare* Md. Code Art. 81 §§ 112, 115 (1957, 1980 Repl. Vol., 1985 Supp.) *with* TP §§ 14-844, 14-847.

[13] Because the certificate holder has two years to file a complaint to foreclose the right of redemption—during which time taxes continue to accrue—it is not uncommon for the property to have accumulated post-sale taxes, interest, and penalties.

incident to the preparation and execution of the deed shall be paid by the holder of the certificate of sale[]"). Once the certificate holder fulfills these post-judgment statutory obligations—paying the balance of the purchase price, along with taxes that have accrued post-sale, and preparing the deed—the tax collector's obligation to complete the transfer is triggered.

The statute sets forth the mechanics of the completion of the transfer of legal title via the execution of a fee simple deed from the collector to the certificate holder. Under the statute, the "clerk of the court in which the suit is instituted shall issue a certified copy of the judgment of the court to the collector and supervisor and the collector is not obligated to execute the deed provided for in this section until that certified copy of the judgment is delivered to the collector." TP § 14-847(c). Upon receipt of the balance of the purchase price, together with all post-sale interest and penalties that have accrued on the property (TP § 14-847(a)), the preparation of the deed by the certificate holder (TP § 14-847(b)), and the delivery by the clerk of the court of the certified copy of the judgment to the collector and supervisor (TP § 14-847(c)), the collector is required to execute the deed "to the holder of the certificate of sale in fee simple" as directed by the court in the final judgment (TP § 14-847(a)), and the supervisor is required to enroll the holder of the certificate of the sale "in fee simple . . . as the owner of the property." TP § 14-847(a); *see also* TP § 14-818(a)(3) ("[o]n receiving the balance [of the purchase price] and after accrued taxes and interest and penalties on the taxes, the collector shall execute and deliver a proper deed to the purchaser[]"); *see also Hardisty v. Kay*, 268 Md 202, 213 (1973) (observing that "upon proof of satisfaction of [the] judgment and payment of any

25

subsequent taxes, interest and penalties owed, the *collector is required to execute a proper deed when one is presented by the certificate holder*[]") (emphasis added).

Once a deed is executed, the purchaser—who is now the new legal title owner—is entitled to possession of the property. *See* TP § 14-850 ("[a]ny person *who acquires a deed to property* under this subtitle is entitled to issuance of a writ for possession of the property under the Maryland Rules as if the person had obtained a judgment awarding possession of the property[]") (emphasis added).[14]

*Remedies Where Certificate Holder Does Not Follow Through on the Post-Judgment Statutory Obligations*

Before we examine the parties' competing statutory interpretations of the tax sale statute in this case, it is useful to not only consider the statutory provisions that apply when the certificate holder fulfills the obligations that entitle the holder to a fee simple deed, but also the statutory provisions that apply when the certificate holder doesn't comply. In other words, what are the statutory remedies available to the tax collector and the property owner when the certificate holder does not follow through with the performance of the post-judgment obligations that would entitle the holder to a conveyance of fee simple title by deed? Such a circumstance is not uncommon—the Court of Special Appeals aptly

---

[14] TP § 14-836(b)(7) sets forth the statutory notice that must be given prior to taking possession. After the "issuance of the judgment foreclosing right of redemption and at least 30 days before taking possession of the property, the plaintiff shall give any tenant of the property written notice of the plaintiff's intention to obtain possession of the property and that the tenant must vacate the property within 30 days after notice." TP § 14-836(b)(7)(i). "During the 30-day period immediately following issuance of the judgment foreclosing the right of redemption, the plaintiff may apply for, process, and obtain, but not execute upon, a writ of possession for the property." TP § 14-836(b)(7)(ii).

26

described this situation in an opinion involving three separate properties in Baltimore City in which the certificate holders failed to consummate the property transfers after the respective judgments were entered foreclosing the rights to redemption:

> If the certificate holder does not pay the taxes in full, the property is left in limbo: the prior owner may not sell the property and knows that, as soon as the certificate holder pays the collector, it will no longer have title to the property, however, the *certificate holder also does not have full rights to the property because the collector has not issued a deed to the certificate holder*.

*Kona Properties, LLC v. W.D.B. Corp., Inc.*, 224 Md. App. 517, 531 (2015) ("*Kona Properties*") (emphasis added).  In such cases, if the certificate holder does not pay the balance of the purchase price and the post-sale taxes, interests and penalties, the statute prohibits the certificate holder from obtaining legal title by deed.  *See* TP § 14-818(a)(2).[15] In addition, where the certificate holder does not comply with the terms of the final judgment within 90 days by paying the amounts required for the execution and delivery of the deed, the statute permits the judgment to be stricken on motion of an interested party for good cause shown.  TP § 14-847(d).[16] The collector and the owner each have the right

___

[15] TP § 14-818(a)(2) provides:

> After the final decree has been passed foreclosing the right of redemption in any property, the collector may not execute or deliver a deed to any purchaser other than the governing body of a county until the balance of the purchase price has been paid in full, together with all taxes and interest and penalties on the taxes accruing after the date of sale.

[16] Specifically, TP § 14-847(d)(1) provides:

> If the holder of the certificate of sale does not comply with the terms of the final judgment of the court within 90 days as to payments to the collector of the balance of the purchase price due on account of the purchase price of the property and of all taxes, interest, and penalties that accrue after the date of

27

to request that the judgment be stricken if the certificate holder fails to pay. *See Hardisty v. Kay*, 268 Md. at 211 (agreeing that the "interested party" mentioned in the predecessor statute, Article 81, § 115, "refers to the owner of the land at the time of the sale or anyone claiming rights through him[]"); *Slattery v. Friedman*, 99 Md. App. 106, 122 (1994); *cert. denied*, 335 Md. 81 (1994) (observing that TP § 14-847(b) permits the collector "to have a judgment set aside if payment is not made as required[]"). As the Court of Special Appeals observed in *Friedman*, TP § 14-847(d) provides a distinct method "for the owners of the property to have the judgment foreclosing their right of redemption reopened." 99 Md. App. at 122. The court further explained that "during the time that the holder of the certificate has not complied with [TP] § 14-847(d), that is, between 90 days after the judgment of foreclosure was entered and payment of the balance due, the owner may petition the court under [TP] § 14-847(d) to reopen the judgment, so long as the balance remains unpaid." *Id.* at 123. After the purchase price is paid, the judgment may only be reopened on the ground of fraud or lack of jurisdiction. *Id.*; TP § 14-845.[17]

---

sale, that judgment may be stricken by the court on the motion of an interested party for good cause shown.

This section was initially enacted in 1972 and was previously codified as §115 in Article 81 of the Maryland Code. *See* 1972 Md. Laws 1766, 1766–67 (Ch. 691); *see also Hardisty v. Kay*, 268 Md. 202, 210 (1973).

[17] TP § 14-845(a) provides that:

A court in the State may not reopen a judgment rendered in a tax sale foreclosure proceeding except on the ground of lack of jurisdiction or fraud in the conduct of the proceedings to foreclose; however, no reopening of any judgment on the ground of constructive fraud in the conduct of the proceedings to foreclose shall be entertained by any court unless an

28

In addition to the statutory provision which permits the judgment to be stricken, the owner and tax collector each have additional remedies against a certificate holder for non-compliance with post-judgment statutory obligations. The owner may file suit against the certificate holder to compel the payment of the bid surplus that was to be paid to the owner upon the entry of judgment. *See Hardisty v. Kay*, 268 Md. 202 (1973).[18] The government entity that is owed the taxes may sue the certificate holder in an action under TP § 14-864 to collect all taxes due and payable within 7 years from the date that the taxes were due.[19]

---

application to reopen a judgment rendered is filed within 1 year from the date of the judgment.

In *Slattery v. Friedman*, 99 Md. App. 106, 123 (1994), *cert. denied*, 335 Md. 81 (1994), the Court of Special Appeals held that TP §§ 14-845 and 14-847(d) "must be read in conjunction with one another." Accordingly, "during the time that the holder of the certificate has not complied with [TP] § 14-847(d), that is, between 90 days after the judgment of foreclosure was entered and payment of the balance due, the owner may petition the court under [TP] § 14-847(d) to reopen the judgment, so long as the balance due remains unpaid." *Id.* However, "[a]fter payment of the balance due, . . . the judgment may be reopened only pursuant to [TP] § 14-845, *i.e.*, on the grounds of fraud or lack of jurisdiction, regardless of whether the payment was made after the petition was filed." *Id.* (footnote omitted).

[18] Where the certificate holder's bid price at the tax sale exceeds the "amount required for the payment of taxes, interest, penalties and costs of [the] sale[,]" the collector is required to pay the surplus bid price to "the person entitled to the balance[,]" TP § 14-818(a)(4), which of course, in many instances, is the title owner. *See Hardisty*, 268 Md. at 206 (in which the owners filed a petition in the foreclosure case to compel payment of the purchase price after the tax sale purchaser did not follow through with paying the balance owed and obtaining title to the property by deed after the foreclosure judgment was entered).

[19] TP 14-844(d)(1) states:

Once a judgment is granted, the plaintiff becomes immediately liable for the payment of all taxes due and payable after the judgment. The plaintiff may be sued in an action under § 14-864 of this subtitle to collect all taxes due

29

And the taxing authority may subject the property to a second tax sale for the delinquent taxes that accrued but remain unpaid after the first sale. *See Prince George's Homes, Inc. v. Cahn*, 283 Md. 76, 79–80 (1978); *Kona Properties*, 244 Md. App. at 531.

Notably absent from the remedies available to the legal title owner or the tax collector where the certificate holder fails to follow through on the holder's post-judgment obligations is any statutory provision that compels specific performance of the obligations thereby entitling the certificate holder to a conveyance of legal title by deed. In other words, if the certificate holder fails to comply with the post-judgment obligations, fee simple title is never transferred by deed.

### C. Fee Simple Title to a Property Sold at Tax Sale Is Conveyed by a Deed from the Collector

In considering the parties' competing interpretations of the tax sale statute, we apply the following principles of statutory interpretation. "The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature." *Lockshin v. Semsker*, 412 Md. 257, 274 (2010). "We begin with an examination of the text of a statute within the context of the statutory scheme to which it belongs." *Nationstar*

---

and payable after the judgment and it is not a defense that a deed to the property has not been recorded.

TP § 14-864 provides:

On or before 7 years from the date the tax is due, the State, a county, or a municipal corporation may initiate an action in a court of appropriate jurisdiction to collect any tax imposed under this article and within the time frame provided by law. If a person owes State and county or municipal corporation taxes to the same collector, the action may combine the claims of the State, county, and municipal corporation.

*Mortgage LLC v. Kemp*, 476 Md. 149, 169 (2021). "We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with forced or subtle interpretations that limit or extend its application." *Lockshin*, 412 Md. at 275 (internal quotation marks and citations omitted). Rather, we construe the statute "as a whole so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless or nugatory." *Koste v. Town of Oxford*, 431 Md. 14, 25–26 (2013) (internal quotation marks and citations omitted). We "do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone." *Lockshin*, 412 Md. at 275. In other words, "[r]eview of the text does not merely entail putting the words under the microscope by themselves with a dictionary at hand, because words that appear clear and unambiguous when viewed in isolation may become ambiguous when read as part of a larger statutory scheme." *Kemp*, 476 Md. at 169 (internal quotation marks and citations omitted); *Johnson v. State*, 360 Md. 250, 265 (2000) (the Court must analyze the statute "in its entirety, rather than independently construing its subparts[]"). "We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope." *Lockshin*, 412 Md. at 276. "We also review the legislative history of the statute to confirm conclusions drawn from the text or to resolve ambiguities. In addition, we examine prior case law construing the statute in question." *Kemp*, 476 Md. at 170. "Finally, we check our interpretation against the consequences of alternative readings of the text." *Bell v. Chance*, 460 Md. 28, 53 (2018). Doing so ensures

that we adopt an interpretation that avoids a construction that is "illogical, unreasonable, or inconsistent with common sense." *Reier v. State Dept of Assessments and Taxation*, 397 Md. 2, 33 (2007) (internal quotation marks and citations omitted). Indeed, "it has been called a golden rule of statutory interpretation that, when one of several possible interpretations produces an unreasonable result, that is a reason for rejecting that interpretation in favor of another which would produce a reasonable result." *Id.* (internal quotation marks and citations omitted); *see also Kemp*, 476 Md. at 170 (explaining that "it is important to consider the consequences of alternative interpretations of the statute, in order to avoid constructions that are illogical or nonsensical, or that render a statute meaningless.") (internal quotations and citations omitted).

With these canons of statutory interpretation in mind, we first turn to the City's interpretation.

*The City's Isolated Interpretation of TP § 14-844(b) Ignores the Plain Language of TP § 14-847(a) Requiring the Collector to Execute a Deed Conveying Fee Simple Title, and is Inconsistent with the Definition of Fee Simple Title and Marketable Title*

Starting with the statutory text, when one reads the plain language of TP § 14-844(b) in isolation and on the surface, the City's interpretation—that the judgment itself vests fee simple title in the certificate holder—sounds plausible. Specifically, the plain language of that subsection provides that:

> If the court finds for the plaintiff, the judgment vests in the plaintiff an absolute and indefeasible title in fee simple in the property, free and clear of all alienations and descents of the property occurring before the date of judgment and encumbrances on the property, except taxes that accrue after the date of sale and easements of record and any other easement that may be observed by an inspection of the property to which the property is subject.

TP § 14-844(b). However, when one retracts the lens of the microscope and reads the language not in a vacuum, but within the larger statutory scheme, taking into account the statute's object and scope, as well as the legislative history and the legislative directive that we construe the statute consistent with the public policy of providing marketable title to property that is sold at a tax sale, applying common law definitions to terms used in statute and in a manner consistent with our case law related to tax sales, the City's interpretation falls short and leads to an illogical or nonsensical interpretation.

The City's isolated reading of TP § 14-844(b)—whereby the *judgment itself* vests fee simple title to real property—ignores the plain language set forth in TP § 18-847(a) that the circuit court's judgment *also* "*direct[s] the collector to execute a deed to the holder of the certificate of sale in fee simple*" upon the payment of the balance of the purchase price and post-judgment taxes, interest, and penalties. (Emphasis added). Reading TP § 14-844(b) together with TP § 14-847(a)—both of which pertain to a circuit court's judgment foreclosing the right of redemption—it is clear the Legislature expressly provides for the conveyance of fee simple title by a deed from the collector upon the payment of the surplus bid price, post-sale taxes, interest, and penalties, and upon the presentation of a certified copy of the judgment. If the City's interpretation were correct—that the judgment itself conveys fee simple title—there would be no reason for the Legislature to require that the judgment *also direct* the conveyance of fee simple title by deed from the collector to the certificate holder. In other words, if we construe the statute to say that the *judgment itself* vests fee simple title in the certificate holder, such an interpretation renders the statutory requirement that a deed be issued conveying fee simple title as meaningless, superfluous

33

or nugatory. "Our canons of statutory interpretation forbid us to construe a statute so that a word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless, or nugatory." *Reier v. State Dept. of Assessments and Taxation*, 397 Md. 2, 28 (2007) (cleaned up).

The City's interpretation is also untenable because it is inconsistent with the common law definition of "fee simple title." Our explanation is perhaps best understood if one considers the City's interpretation as if viewing it through a still-frame photograph that freezes the judicial proceeding at a point in time immediately after the entry of the judgment foreclosing the right of redemption but prior to the execution of a deed. As discussed in part II.A., *supra*, fee simple title is the broadest property interest allowed by law. The owner of fee simple title holds "absolute and exclusive control and dominion over the property." *Arnd*, 162 Md. at 324. If, as the City asserts, the judgment *itself* conveys fee simple title by operation of law—instead of the tax deed—such an interpretation would mean that the certificate holder acquires legal title to property *even if* the certificate holder has not paid the balance of the purchase price, post-sale taxes, penalties and interest, and at a time when the *judgment can be stricken* by the record title owner or the tax collector if payment is not made within 90 days of the date of the entry of the judgment.[20] Such an interpretation is antithetical with our common law definition of

---

[20] Like the City, the Dissent chooses to read TP § 14-844(b) in isolation—with no discussion whatsoever of the statutory provisions that: (1) *require that the judgment expressly direct the collector to execute a deed conveying fee simple title* (TP § 14-847(a)) only upon the certificate holder's satisfaction of the post-judgment statutory obligations (TP § 14-818(a)(2)); and (2) permit the record owner to request that judgment can be stricken if the certificate holder does not comply with the terms of the judgment, which

fee simple ownership. Interpreting the statute in such a manner leads to an absurd result. We have stated that "absurd results in the interpretive analysis of a statute are to be shunned." *Mayor & Council of Rockville v. Rylyns Enterprises, Inc.*, 372 Md. 514, 550 (2002).

The City's interpretation is also inconsistent with the Legislature's directive that the tax sale statute provisions "shall be construed" to ensure a balance between the due process and redemption rights of the owner and "the public policy of providing marketable title to property that is sold at a tax sale." TP § 14-832(1) and (2). As we previously explained, "marketable title" is "a title without encumbrances and free from any reasonable doubt as to any question of law or fact that may call it in question in the future and subject the purchase to the hazard of litigation." *Garner*, 185 Md. at 389. In the context of equitable title arising from a purchase contract of sale, we have stated that "*equitable title is not marketable, for in reality, it is not a title at all, but merely a right to the legal title*." *Id.* at

---

would in turn, permit the owner's right of redemption to be reopened, *see* TP § 14-847(d); *Slattery*, 99 Md. App. at 122 (observing that TP § 14-847(d) provides a distinct method for "the owners of the property to have the judgment foreclosing their right of redemption reopened."). Moreover, the Dissent's opinion is devoid of any discussion of the definition of "fee simple title," the very label that the Dissent seeks to affix to the judgment—a definition that *is not defined by statute*, but by common law dating back to William Blackstone. *See* part II.A. of this opinion and note 5 herein. A certificate holder who has the *right* to obtain a fee simple title by a deed *if and only if* the certificate holder complies with the statutory post-judgment obligation—a right that *may be stricken for non-performance*—is directly at odds with the common law definition of fee simple title. It is not a title in which the certificate holder has absolute and exclusive dominion and control over the property and is not subject to any conditions or limitations. Indeed, we are not aware of any circumstances under Maryland law where "fee simple title" can be "stricken" for failure to comply with post-judgment conditions, and for good reason—such a concept would be at odds with the very definition of fee simple title.

35

390 (emphasis added). No reasonable third-party purchaser would buy a property from a certificate holder based solely upon the circuit court's entry of a judgment and without a deed from the collector conveying fee simple title to the certificate holder. Again, if one considers the proceeding during the period immediately after the entry of judgment, if a certificate holder does not fulfill his or her statutory obligations within 90 days, the judgment may be reopened and stricken by the record title owner or tax collector. Indeed, the face of the judgment evidences the certificate holder's inchoate interest vis-à-vis legal title to the property. Without a deed, the legislative directive required to be included in the judgment under TP § 14-847(a)—that the collector "execute a deed to the holder of the certificate in fee simple"—has not been satisfied.

*The Correct Statutory Interpretation—The Judgment Creates Equitable Title; the Deed Conveys Legal Title*

We contrast the City's interpretation against an alternative interpretation—that the certificate holder acquires *equitable title* upon the entry of the judgment—that is, the *right to acquire legal title*, upon the performance by the certificate holder of the holder's post-judgment statutory obligations and the collector's conveyance of fee simple title by deed. When one reads all the applicable provisions of the statute in a comprehensive and harmonious fashion, and against the statute's purpose and scope, and within the context of the definitions supplied by common law, it leads to a clear reading of the statute that results in the conveyance of fee simple title by the execution of a deed from the collector to the certificate holder upon the holder satisfying all the statutory requirements.

36

First, we start with TP § 14-834, which confers equitable jurisdiction on the circuit court to "give complete relief" with respect to properties within the circuit that are subject to a tax sale, including the authority "*to order* an absolute and indefeasible estate in fee simple [] *to be vested* in the holder of the certificate of sale." TP § 14-834 (emphasis added). Notably, the statutory provision establishing the circuit court's jurisdiction in tax sale proceedings does not say that the *court itself* vests fee simple title, but rather, gives the court the authority to *order* it.

When one reads the statutory provisions that pertain to the circuit court's order or judgment together, the statute requires that the judgment contain language that: (1) "foreclose[s] the right of redemption[,]" which is "final and conclusive" on all defendants, including their heirs, devisees, personal representatives, and successors in right, title or interest (TP § 14-844(a)); (2) "vests in the plaintiff an absolute and indefeasible title in fee simple in the property, free and clear of all alienations and descents of the property occurring before the date of the judgment" (TP § 14-844(b)); (3) directs the "collector to execute a deed to the holder of the certificate of sale in fee simple . . . on payment to the collector of the balance of the purchase price, due on account of the purchase price, together with all [post-sale] taxes and interest and penalties" (TP § 14-847(a)); and (4) "direct[s] the supervisor to enroll the holder of the certificate of sale in fee simple . . . as the owner of the property" (*Id.*).

The language in the judgment required under (1) and (2) above are necessary to confer authority upon the collector to undertake the requirement in (3)—the execution of a deed conveying fee simple title. Stated another way, upon receipt of the certified copy of

37

the judgment containing the statutory language required by TP §14-844(a) and (b), the collector has assurance that the circuit court has determined, through the entry of a final judgment, that the certificate holder has satisfied the statutory requirements pertaining to the due process and redemption rights of persons who own or have an interest in the property sold at a tax sale.

Reading TP § 14-844(a) and (b) together with TP § 14-847(a), not only does the judgment provide the collector with the *authority* to execute a deed conveying fee simple title, but the collector is *directed* to do so upon the payment of the purchase price, and post-sale taxes, interest and penalties. Upon the certificate holder's performance of these post-judgment conditions, the collector is required to convey fee simple title by deed. TP §§ 14-818(a)(3), 14-847(a).[21] Once the deed is conveyed, the tax sale purchaser has full legal

---

[21] Curiously, the Dissent attempts to distinguish the 1880's laws—which required the tax collector to convey fee simple title by deed—with the modern iteration of the tax sale provisions beginning in the 1940's to suggest that the General Assembly *removed the requirement* that fee simple title be transferred by deed. Dissent Slip Op. at 2–3. Referencing 1943 Md. Laws 1354, the Dissent states that "[i]f the General Assembly had intended to require that a deed be executed by a tax collector to vest fee simple title in a tax sale buyer, the General Assembly would have done so." Dissent Slip Op. at 3–4. As reflected by our discussion of the legislative history in note 12, we agree with the Dissent that, dating back to the 1872 Act—the point at which the Legislature required judicial ratification of tax sales—the tax sale laws have consistently required the conveyance of property that has been sold at tax sale by a deed. Respectfully, the Dissent is simply wrong that the General Assembly's modern enactments of the tax sale statutes eliminated the requirement from the earlier tax sale statutes that fee simple title be conveyed from the tax collector by deed. As we pointed out in note 12, since 1943, the statutory requirement that the judgment "direct the Collector to prepare and execute a deed to the holder of the certificate of sale, in fee simple" upon the payment of the balance of the purchase price, taxes, interest and penalties, has remained unchanged. Article 81, § 90O (1943). In addition to ignoring the legislative history that reflects that prior versions of the statute have consistently required the conveyance of fee simple title by deed, the Dissent fails to discuss or even mention the *current* statutory requirement that "*the judgment of the court*

38

title in fee simple. All conditions in the judgment have been satisfied, the judgment may not be opened and stricken for good cause under TP § 14-847(d), and the foreclosure proceeding is concluded. This interpretation is consistent with the Legislature's express instruction that we construe the statute to ensure a balance between the due process and redemption rights of the property owner and interested persons and the public policy of providing marketable title to properties sold at tax sales. *See* TP § 14-832. It is also consistent with the common law definitions of "fee simple" title and "marketable title." Specifically, fee simple, marketable title to the property has been conclusively conveyed from the collector to the purchaser by deed, which clothes the purchaser with title clear of any limitations or restrictions, and "free from encumbrances and any reasonable doubt as to its validity[.]" *Sinclair*, 204 Md. at 334.

As we describe below, this interpretation is also consistent with: our tax sale case law establishing the principle that the delivery of the tax sale deed creates a new title granted by the sovereign authority; Maryland's general title conveyance law; and our holdings in the context of mortgage foreclosure law describing the progression of a mortgagee's rights in a foreclosure proceeding.

*Our Case Law Describing the New Tax Title that Arises from a Tax Deed*

As described in note 12, since the enactment of the very early tax sale statutes and continuing to the present tax sale statute, the Legislature has consistently required the

---

*shall direct the collector to execute a deed to the holder of the certificate of sale in fee simple*" upon "payment to the collector of the balance of the purchase price of the property, together with all taxes and interest and penalties on the property that accrue after the date of sale." TP § 14-847(a) (emphasis added).

conveyance of legal title by tax deed from the collector to the purchaser. Our case law has similarly described the new title to property that emerges from a tax sale upon the delivery of a tax deed.

For more than a century, we have recognized that the *issuance of a tax deed* to a grantee after a tax sale and a proceeding to foreclose the property owner's right of redemption *creates a new and complete title in land,* under an independent grant from the sovereign taxing authority. In *McMahon v. Crean,* we embraced the United States Supreme Court's articulation of the notion that a tax deed clothes the purchaser with a new title:

> If the *tax deed* is valid, then from the time of its delivery it clothes the purchaser, not merely with the title of the person who had been assessed for the taxes and had neglected to pay them, but with a new and complete title in the land, under an independent grant from the sovereign authority, which bars and extinguishes all prior titles and incumbrances of private persons, and all equities arising out of them.

109 Md. 652, 652 (1909) (quoting *Hefner v. Northwestern Ins. Co.*, 123 U.S. 747, 751 (1887)) (emphasis added). We have restated this principle over the years in our discussion of tax sale deeds and titles arising therefrom. *See Wagner v. Goodrich*, 148 Md. 318, 323 (1925) (observing that title "derived from [a] ratified tax sale" is "a title which includes, not merely the interest of the persons to whom the property had been assessed for the taxes on account of which it was sold, but as the sale appears to have been valid, the *grantee in the tax deed* became invested with 'a new and complete title in the land, under an independent grant from the sovereign authority[]'") (emphasis added). In *Winter v. O'Neill*, 155 Md. 624, 631 (1928), the Court, speaking through Judge Digges, stated that:

> The title derived from a tax sale is statutory, and it being in derogation of a common right, all of the requirements as set out in the statute must be

40

complied with, in order to acquire good title from such a sale; yet if *the tax deed* and the proceedings upon which it is based are valid, then from the time of its delivery it *clothes the purchaser* not merely with the title of the person who had been assessed for the taxes and had neglected to pay them, but *with a new and complete title in the land*, under an independent grant from the sovereign authority, which bars or extinguishes all prior titles and encumbrances of private persons, and all equities arising out of them.

(Emphasis added).

And most recently in *Lippert v. Jung*, 366 Md. 221, 232–36 (2001), we summarized these cases with approval. We noted that these cases "are a line of older, but still viable cases," which we proceeded to "discuss more at length." *Id.* at 229. In *Lippert*, the plaintiffs filed a complaint to quiet title to property that abutted property they owned, based upon their claim of adverse possession. *Id.* at 223. The plaintiffs asserted that they had possessed property for 19 years in a manner to satisfy the requisite elements for adverse possession prior to a tax sale of the property and the entry of a final order foreclosing the right of redemption. *Id.* Under the adverse possession statute, a person seeking to claim title by adverse possession must satisfy the statutory requirements for an uninterrupted period of 20 years. The plaintiffs asserted that the tax sale and order foreclosing the right of redemption—which was entered during their nineteenth year of occupancy—did not cause the statutory period to begin to run anew. *Id.* at 225. We disagreed and held that the plaintiffs' adverse possession period was extinguished by the successfully completed tax sale, and accordingly, they had no claim to the property. *Id.* at 245. In so holding, we reaffirmed the principle expressed by this Court for more than 100 years that "properly acquired tax titles are *new grants of title by the sovereign entity*." *Id.* (Emphasis added).

41

Writing for the Court, Judge Cathell explained that title to property in Maryland was originally granted by the English Kings to the Lord Proprietors who, in turn, had the right to grant the lands to others. *Id.* at 238–39. The Lord Proprietor's successors—the colonial states such as Maryland—"became vested with the right to grant and patent titles to land to the citizens, a process that continues." *Id.* at 239–40. We observed that, since the inception of grants of title in the colonial era, land grants and patents have been

> subject to the requirement that the created title to property be subject to charges on the land and that the title owners, and their successors, pay such taxes or charges on the land so granted, as the states, from time to time, deem necessary for the proper functioning of government. The land itself is subject to taxes. If taxes are not paid, the title to the land through the tax sale process is granted and titled anew to the tax sale purchaser.

*Id*. at 240. We pointed out that the tax collector's statutory authority to undertake a tax sale has been around since the inception of land grants of title and the colonial days of taxing hogsheads of tobacco. *Id.* at 239.

We examined our case law, dating back over 100 years, which reflects the principle that a tax deed issued by the collector after a successful tax sale and foreclosure of redemption creates a new title under an independent grant from the sovereign authority. *Id.* at 232–236 (citing *Winter*, 155 Md. at 631; *Hill v. Williams*, 104 Md. 595, 604 (1906); *Cooper v. Holmes*, 71 Md. 20, 30 (1889); *McMahon*, 109 Md. at 665; *Wagner*, 148 Md. at 323). After reviewing the history of these cases, as well as the similar cases from other jurisdictions, we reaffirmed the principle under Maryland law—consistent with the majority view in the cases across the country—that "properly acquired tax titles are new grants of title by the sovereign entity." *Lippert*, 366 Md. at 245. Accordingly, we

42

concluded that the plaintiffs' adverse possession claims did not survive the judgment foreclosing the right of redemption. *Id.* The Legislature's requirement that the tax collector execute and deliver a deed conveying fee simple title to the certificate holder upon the successful conclusion of the foreclosure proceeding, thereby creating a new title, is consistent with our jurisprudence spanning more than a century.[22]

*Our Statutory Interpretation that the Deed Conveys Fee Simple Title is Consistent with Maryland's Title Conveyance Law*

We further observe that our interpretation of the tax sale statute is also consistent with the Maryland general title conveyance statute providing that, with limited exception, the only means by which legal title to real property is transferred is by recording a deed in the land records of the county in which the property is located. *See* RP § 3-101(a); *Kingsley*, 253 Md. at 27 ("legal title to land, of course, does not pass, other than by operation of law, until a deed is properly executed and recorded[]"). By requiring that the judgment direct the collector to execute a deed conveying fee simple title to the certificate holder upon the performance of the post-judgment conditions, the Legislature created a process for conveying fee simple title to property sold at a tax sale that is consistent with (instead of an exception to) Maryland's title conveyance law.

---

[22] The Dissent's plain language interpretation—that the judgment itself vests fee simple title—is inconsistent with our longstanding jurisprudence that we summarized in *Lippert*, which reflects that new title to property that is subject to a tax sale arises from the tax collector's conveyance of title by a tax deed. 366 Md. 229, 232–36. We decline to interpret the tax sale statute in a manner inconsistent with 100 years of case law, particularly where the statute, on its face, requires the collector to convey fee simple title by deed.

43

*Our Statutory Interpretation of the Tax Sale Statute is Consistent with Our Case Law Concerning Mortgage Foreclosures*

Our interpretation of the tax sale statute is also consistent with our case law concerning the mortgage foreclosures. For more than 70 years, we have analogized the *in rem* proceeding established by the tax sale statute to a mortgage foreclosure. *See*, *e.g.*, *Thomas v. Kolker*, 195 Md. 470, 474 (1950). We have specifically recognized that the "*position of a certificate holder in a proceeding to foreclose the right of redemption is analogous to that of a mortgagee in foreclosure proceedings*." *Hardisty*, 268 Md. at 212 (emphasis added);[23] *see also Magraw v. Dillow*, 341 Md. 492, 505 (1996) (noting that "we have [] analogized the rights of a tax sale holder to a mortgagee[]") (citing *Hardisty*, 268 Md. 212); *Kona Properties*, 224 Md. App. at 554 (observing that the "the *Hardisty* Court analogized the position of a tax sale certificate holder in a proceeding to foreclose the right of redemption to that of a mortgagee, an analogy the Court of Appeals cited with approval as recently as 1996[]") (citing *Magraw*, 341 Md. at 492) (additional citations omitted).

In the context of the judicial foreclosures involving mortgages, our case law has articulated the progression of the mortgagee purchaser's interest from an *inchoate equitable*

---

[23] In *Hardisty*, 268 Md. at 212, we held that a property owner could sue the certificate holder for failing to pay the bid surplus price where the certificate holder did not pay it following the judgment foreclosing the right of redemption and had not obtained fee simple title by deed. We analogized the certificate holder to that of a mortgagee in a foreclosure proceeding. *Id.* We noted that, in a foreclosure proceeding, "the order of final ratification is to be respected and obeyed," and where the balance of the funds is not paid, "the remedy may be by petition by the injured party asking that the payment be compelled[.]" *Id.* By analogy, we concluded that the property owners were entitled to have the certificate holder compelled, through the entry of a money judgment, to make the payment contemplated by the final judgment. *Id.* at 213.

*interest* in the property prior to the court's ratification of the sale, to *equitable title* upon the court's order ratifying the sale, which ripens into *legal title* only after the purchase price is paid and other terms of the sale, if any, are met and a deed of conveyance delivered.

In *Empire Properties v. Hardy*, 386 Md. 628, 650 (2005), we reiterated this progression of the mortgagee's interest in deciding when a purchaser in a mortgage foreclosure sale acquires a *legal right to possess property*, as opposed to a *right to request possession* of property. We noted that our case law established that, "prior to ratification in the circuit court, a purchaser at a foreclosure sale has an inchoate equitable title to the property." *Hardy*, 386 Md. at 650 (citing *Union Trust Co. v. Biggs*, 153 Md. 50 (1927); *Merryman v. Bremmer*, 250 Md. 1 (1968); and *Simard v. White*, 383 Md. 257 (2004)). We stated that "[t]his inchoate equitable title becomes a complete equitable title when the foreclosure sale is ratified by the court." *Id.* at 646 (quoting *Simard*, 383 Md. at 313 (stating that "once the court ratifies the sale, complete equitable title passes to the purchaser") (brackets omitted)). Although complete *equitable title* passes upon the court's ratification of the sale, we have stated that *legal title* does not pass until the purchase price and conditions of the foreclosure sale are met, and a deed of conveyance is delivered. *Hardy*, 386 Md. at 650 (in a foreclosure proceeding, "[t]he legal title to the property is not conveyed, however, until the purchase price is paid and other terms of the sale, if any, are met and a deed is delivered[]"); *see also Legacy Funding LLC v. Cohn*, 396 Md. 511, 515 (2007) (reiterating our holding in *Hardy* that the "purchaser at a foreclosure sale is not actually *entitled* to possession until the purchase price is paid and, through delivery of a deed of conveyance,

45

legal title passes[]") (emphasis in original)[24]; *Simard*, 383 Md. at 325 (noting that "the legal

title of the purchaser does not vest until the deed to him is delivered[]") (citations omitted);

*Union Tr. Co. v. Biggs*, 153 Md. 50, 55 (1927) (stating that "[a]fter the foreclosure sale the

purchaser had the equitable interest in the land commensurate with that conveyed by the

mortgage deed, and he was entitled to the legal title upon the final ratification of the sale by

the court and the payment of the purchase money[]").

To support its argument that the judgment vests fee simple title in the certificate

holder, the City isolates one sentence in *Magraw*, 341 Md. at 505, in which we stated that

"the tax sale purchaser holds an inchoate right of ownership, which vests upon the

successful foreclosure." We agree with the statement in *Magraw*—just not for the

proposition advanced by the City. The City equates the phrase in *Magraw* referring to a

---

[24] *Empire Properties, LLC v. Hardy*, 386 Md. 628, 650 (2005) and *Legacy Funding LLC v. Cohn*, 396 Md. 511, 515 (2007) involved the issue of when a foreclosure purchaser is entitled to possession, as opposed to when a foreclosure purchaser may permissively seek possession. These cases recognized that "the purchaser at a foreclosure sale is not actually entitled to possession until the purchase price is paid and, through delivery of a deed of conveyance, legal title passes." *Legacy Funding*, 396 Md. at 515; *Empire Properties*, 386 Md. at 650. Upon ratification of the sale, but before a deed is executed, we held that a purchaser "may seek possession of the property" and that "an equity court, on a case-by-case basis, and upon proper notice, has the discretion, unless the circumstances warrant otherwise, to grant possession." *Legacy Funding*, 396 Md. at 515. In *Legacy Funding*, we stated that "the current view of this Court, is that the purchaser becomes entitled to possession only when it has either paid the full purchase price in conformance with the terms of the sale and received a conveyance of legal title to the property, or, following ratification of the sale but prior to settlement, has received an order for possession from the court." 396 Md. at 516. The principles articulated in *Legacy Funding* concerning the *right* of possession arising from the delivery of a deed of conveyance are consistent with the right to possession under the tax sale statute, which also arises from the deed. *See* TP § 14-850 (stating that "[a]ny person who *acquires a deed* to property under this subtitle is *entitled* to issuance of a writ for possession of the property under the Maryland Rules as if the person had obtained a judgment awarding possession of the property[]") (emphasis added).

"successful foreclosure" with the entry of judgment. As discussed above, the statutory process for conveying legal title to property sold at a tax sale does not end with the entry of judgment. A successful foreclosure occurs when the conditions required in the judgment are satisfied, and the judgment may no longer be stricken for non-performance. Upon the satisfactory completion of those conditions—which culminate in the collector's execution and delivery of a deed conveying fee simple title to the certificate holder—the judgment may not be reopened other than on grounds of fraud or lack of jurisdiction.

We reaffirm the principle articulated in *Hardisty*, 268 Md. at 212, and *Magraw*, 341, Md. at 505, which was recently acknowledged by the Court of Special Appeals in *Kona Properties*, 224 Md. App. at 554, that the position of a certificate holder in a tax sale proceeding to foreclose the right of redemption is analogous to that of a mortgagee in a foreclosure proceeding. This analogy is entirely consistent with the equitable and legal title benchmarks established by the tax sale statute. Specifically, during the period commencing with the issuance of the certificate of sale, until the entry of the judgment foreclosing the right of redemption, "the tax sale purchaser holds an inchoate right of ownership[.]" *Magraw*, 341 Md. at 505. The inchoate right or lien is embodied in the certificate of sale. TP § 14-823. It is an inchoate right because, at any time prior to the entry of the judgment foreclosing the right of redemption, the title owner may redeem the property by paying, among other things, the amount paid by the certificate holder, plus the applicable rate of interest. TP § 14-828. If the property is redeemed, the certificate holder surrenders the certificate and receives the redemption amount paid to the collector, excluding taxes. *Id.* Just as a court's order ratifying a mortgage foreclosure sale passes

47

complete equitable title to the purchaser, we determine that the judgment foreclosing the

right of redemption similarly passes equitable title to the certificate holder. The interest is

transformed from an *inchoate* right to a *choate* one upon the entry of the judgment because

the record title owner no longer has the right to redeem it by paying the taxes. Upon the

entry of the judgment, the certificate holder has equitable title, or stated otherwise, *the right*

*to acquire legal title by deed*, which may be exercised by paying the balance of the purchase

price, and post-sale taxes,[25] penalties, and interest, within 90 days following the entry of

---

[25] In support of its position that the judgment itself vests fee simple title in the certificate holder, the City points to the fact that, upon the entry of the judgment, the certificate holder becomes "immediately" liable for the payment of all taxes due and payable, as well as any assessments and fees of a homeowner or condominium association. TP § 14-844(d)(1) and (2). We reject the City's assertion that the tax obligation reflects the Legislature's intent to vest fee simple title upon the entry of judgment. There is a very logical alternative explanation for the Legislature's imposition of liability for taxes upon the certificate holder upon the entry of judgment that has no relation to title conveyance law. We explain.

When a property has been sold at a tax sale, during the two-year period in which the certificate holder may initiate proceedings to foreclose the owner's right of redemption under TP § 14-833, post-sale taxes, penalties and interest continue to accrue. Despite their accrual, however, the collector may not put the property into a second sale for these unpaid taxes during such two-year period. *See Prince George's Homes, Inc. v. Cahn*, 283 Md. 76, 82 (1978) (explaining that during the two-year period in which a complaint to foreclose the right of redemption may be filed, "there could be no other tax sale, and that subsequent taxes shall continue to accrue until the purchaser or holder of the certificate of sale has an opportunity to file his [complaint] and to secure a deed from the collector[]") (internal quotations omitted). When the right of redemption is finally foreclosed by the entry of judgment, there is often a significant, additional tax liability that is owed to the taxing authority. The provision of TP § 14-844(d), which creates immediate liability for the payment of these taxes, ensures the prompt payment thereby avoiding the expense and delay of second sale if they are not paid. Additionally, the provisions of TP § 14-844(d) and TP § 14-864, when read together, create an *in personam* cause of action against the certificate holder for the post-judgment taxes, which may be filed within seven years from the date of the sale. In other words, by making the certificate holder personally liable for these taxes, the taxing authority has an additional enforcement tool against a certificate

the judgment. Upon the satisfaction of these post-judgment conditions within the 90-day period, the certificate holder is entitled to a deed from the collector which conveys fee simple title to the property. TP § 14-847; § 14-818(a)(3).

In conclusion, we hold that the circuit court's entry of a judgment foreclosing the owner's right of redemption in a tax sale proceeding does not vest fee simple title in the certificate holder. It grants equitable title to the certificate holder, or the right to acquire legal title upon the performance of certain statutory conditions. Legal title does not pass until the certificate holder pays the balance of the purchase price, post-sale taxes, interest and penalties, and the collector executes a deed conveying fee simple title.

### D. The Judgment Does Not Extinguish the Tax Certificate—The Certificate is Extinguished Upon the Execution and Delivery of the Deed

Having determined that the certificate holder acquires an equitable interest in the property upon the entry of judgment, which ripens into legal title upon the performance of the statutory conditions—*i.e.*, paying the balance of the purchase price, taxes, penalties and

---

holder who does not fulfill the post-judgment obligations. Without the ability to pursue an *in personam* cause of action against the certificate holder who defaults on the holder's post-judgment obligation, a taxing authority's only remedy would be to sell the property at a second tax sale.

Given the logical reason for the Legislature's imposition of personal liability for the unpaid taxes at this juncture in the process, we decline to interpret this requirement as evidence that the Legislature intended to alter the general requirement that fee simple title is transferred by deed—which the General Assembly specifically incorporated into the tax sale statute. *See* TP § 14-847(a). Additionally, we further observe that there are other instances where an equitable title holder is liable for taxes or fees such as homeowner's fees prior to taking legal title. *See e.g.*, *Campbell v. Council of Unit Owners of Bayside Condominium*, 202 Md. App. 241, 251 (2011) (holding that the purchaser at a foreclosure proceeding who has obtained equitable title becomes immediately liable for condominium assessments and fees).

interest, and the execution of a deed conveying fee simple title—we next consider whether the certificate of sale survives the entry of judgment, and whether the certificate holder may continue to freely assign it consistent with the provisions of TP § 14-821. We determine that there is nothing in the statute that even hints at the notion that the certificate is somehow extinguished by the judgment or that its assignment is affected.

Starting with the language in the statute, we observe that the General Assembly specifically refers to the "holder of the certificate of sale" when describing the post-judgment steps that either lead to the conveyance of fee simple title by deed, or the motion to strike that may be filed if the certificate holder fails to comply with the statutory obligations. *See*, *e.g.*, TP § 14-847(a)(1) (requiring the circuit court judgment to direct the "collector to execute a deed to the holder of the certificate of sale in fee simple[])"; TP § 14-847(b) (requiring the "holder of the certificate of sale" to prepare the deed); TP § 14-847(d) (providing an interested person with the right to file a motion to strike the judgment "[i]f the holder of the certificate of sale does not comply with the terms of the final judgment of the court within 90 days[]"). We agree with the Court of Special Appeals' conclusion that these statutory references to the "holder of the certificate of sale" demonstrate that "the certificate of sale is not a legal nullity and retains its value until the deed is executed and delivered." *Thornton Mellon,* 249 Md. App. at 243.

We also observe that the tax sale statute expressly states that the certificate is freely assignable and does not contain any provision limiting the assignability only to that period prior to the entry of judgment. *See* TP § 14-821(a) (providing that "any certificate of sale executed and delivered by the collector to the purchaser is assignable and an assignment of

50

the certificate of sale vests in the assignee, or the legal representative of the assignee, all the right, title, and interest of the original purchaser[]").[26] We agree with the Court of Special Appeals that, "if the [L]egislature had intended to . . . limit the assignment of a certificate of sale, post judgment, it would have done so expressly." *Thornton Mellon*, 249 Md. App. at 243. "This Court has been most reluctant to recognize exceptions in a statute when there is no basis for the exceptions in the statutory language." *Lee v. Cline*, 384 Md. 245, 256 (2004); *see also Wheeling v. Selene Fin. LP*, 473 Md. 356, 384 n.9 (2021) ("[w]e will not divine a legislative intention contrary to the plain language of a statute or judicially insert language to impose exceptions, limitations or restrictions not set forth by the [L]egislature[]").[27]

---

[26] As we mentioned in note 8 herein, TP § 14-821(b) contains an exception that is not applicable here, pertaining to a limited auction arising in Prince George's County under TP § 14-817.

[27] To support their argument that the tax sale certificate issued to a private purchaser is extinguished by the judgment foreclosing the right of redemption, the Dissent and the City point to statutory provisions that apply when the governing body of a county or other taxing agency buys property at a tax sale, TP §§ 14-824, 14-825. Dissent Slip Op. at 5–7. This circumstance arises where, at the public sale, there is no private purchaser. In such instances, the governmental taxing authority is *required* to "buy in and hold any property . . . offered for sale for nonpayment of any taxes for which there is no private purchaser[,]" *see* TP § 14-824(a), unless the property is abandoned, in which case, the statute makes the governmental taxing authority's purchase permissive, *see* TP § 14-824(b). In either instance, the governing body (or land bank established by the governing body by statute) or other taxing agency "[has] the same rights and remedies with regard to the property as other purchasers, including the right to foreclose the right of redemption." TP § 18-824(c). Where the governing body or taxing authority purchases the property under this section, the collector issues a certificate of sale. TP § 14-824(d). TP § 14-825 provides that "[w]hen the governing body of a county or other taxing agency has purchased any property at a tax sale, it may sell and assign the certificate of sale relating to the property or after foreclosure sell the property."

The Dissent and the City interpret TP § 14-825 to suggest that a governing body's certificate of sale may only be assigned up until the judgment foreclosing the right of redemption, and therefore, a private purchaser's assignment similarly may not be assigned

51

Our reading of the statute—that the certificate of sale is assignable after the judgment—is consistent with the public policy of ensuring that the tax sale process creates marketable title for properties sold at a tax sale. The public policy of creating marketable title is served by encouraging the completion of the transfer of interests once a certificate holder undertakes to foreclose the right of redemption. We explain. If, for whatever reason following the entry of the judgment, the certificate holder is unable to complete the post-judgment obligations—*i.e.*, by paying the surplus bid price, and post-sale taxes, interest and

---

after the entry of judgment. Dissent Slip Op. at 5–7. We disagree with the Dissent and the City's overly simplistic reading of TP § 14-825. The language in TP § 14-825 pertaining to a governing body's sale of real property following a tax sale is entirely consistent with the process established by the tax sale statute for private purchasers. TP § 14-825 draws the same distinction between the equitable or lien interest reflected in a tax sale certificate (which is assignable) and legal title to the property, which may not be sold unless and until the record title owner's right of redemption has been judicially foreclosed. Stated another way, *neither* the governing body nor a private purchaser may "sell the property" until after a judicial proceeding that forecloses the right of redemption. This applies to all certificate holders, whether they are public or private entities. TP § 14-825 simply reiterates the requirement under the statute—which applies to all certificate holders—that a property may not be sold until the record title owner's right of redemption has been foreclosed.

The language in TP § 14-825 must also be read with other statutory provisions that address a governing body's acquisition of tax sale property. For example, while the *statute prohibits* the collector from executing a deed to the private certificate holder until the balance of the purchase price and post-sale taxes, interest and penalties are paid, the same prohibition *does not apply* to the tax collector's conveyance by deed to a governing body. *See* TP § 14-818(a)(2) (providing that "[a]fter the final decree has passed foreclosing the right of redemption in any property, the collector may not execute or deliver a deed to any purchaser *other than the governing body of a county*, until the balance of the purchase price has been paid in full, together with all taxes and interest and penalties on the taxes accruing after the date of sale[]") (emphasis added). In other words, reading TP § 14-818(a)(2) together with TP § 14-825, the provisions make clear that the governing body (unlike the private purchaser certificate holder) may take title to the property by deed without paying the taxes owed and other charges, however, neither the private purchaser nor the governing body may sell the property until the record owner's right of redemption has been foreclosed.

penalties—the holder will not be entitled to a deed conveying fee simple title.  *See* TP § 14-818(a)(2).  If the record title owner does not successfully move to strike the judgment and pay all amounts due to redeem the property, then the property will be placed into a second tax sale, and the cycle will be repeated.  *See Cahn*, 283 Md. at 78; *Kona Properties*, 224 Md. App. at 532.  During the second tax sale, the taxing authority will continue to carry the unpaid taxes, and the property will continue to be encumbered with a cloud on its title unless and until a successive sale is completed, including the time-period necessary to foreclose the right of redemption and a successful transfer of the property by a deed conveying fee simple title.  As discussed above, completion of this statutory process can take years.  If, on the other hand, following the first tax sale and the entry of the judgment foreclosing the right of redemption, the certificate holder assigns its interest in the certificate to an assignee, who satisfies the post-judgment conditions and receives a deed conveying fee simple title, the tax sale foreclosure proceeding is concluded, and the property now has clear and marketable title—one of the express policy objectives of the tax sale statute.[28]

---

[28] The Dissent's view that the judgment vests fee simple title does not consider or analyze the consequences under the statute when the certificate holder fails to perform its statutory obligation.  The Dissent fails to acknowledge the statutory references that refer to a "certificate holder's" post-judgment obligations.  *See* TP § 14-847(b) and(d).  Under the Dissent's interpretation, we query what happens to the status of title—or its marketability—if the certificate holder fails to pay the purchase price or outstanding tax obligations—a rather common occurrence in tax sales.  *See Kona Properties*, 224 Md. App. at 531.  Notably, although the statute permits the judgment to be stricken where the certificate holder fails to comply with the post-judgment conditions, there is no statutory provision that *compels* performance.  In other words, if the certificate holder fails to comply with the post-judgment conditions, the statute precludes the conveyance of fee simple title by deed.  TP § 14-818(a)(2).  The Dissent's interpretation—whereby the judgment vests absolute fee simple title in the certificate holder as a matter of law and extinguishing the

53

To summarize, we hold that the judgment does not extinguish the certificate of sale,

nor does the judgment affect the assignability of the certificate. There is nothing in the

plain language of the statute that supports this notion—quite the opposite, to read the statute

in this manner could frustrate the policy of encouraging "participation in the [Maryland]

tax sale program and in decreeing marketable title." *Royal Plaza Ass'n v. Bonds*, 389 Md.

187, 204 (2005) (quoting *Sallie v. Tax Sale Investors, Inc.*, 998 F. Supp. 612, 618 (D. Md.

---

assignability of the tax sale certificate—is at odds with the very definition of marketable title.

Moreover, the Dissent's doomsday predictions arising from a certificate holder's ability to assign the certificate post-judgment—specifically, that it will create problems with title searches, "exacerbate the issue of vacant buildings in Baltimore City" and result in the City's loss of tax revenue—are unfounded. Dissent Slip. Op. at 16–18. *First*, the assignment of a tax sale certificate—either before or after judgment—creates no adverse consequences in connection with a title search. The tax deed in this case, like any other tax deed involving an assignment of a tax sale certificate, will reflect in its recitals, the case number of the foreclosure proceeding, the former record title owner, and the assignment of the tax sale certificate from the tax sale purchaser to the assignee. Additionally, from a marketability standpoint, the deed provides clear title—evidence that the post-judgment conditions have been satisfied. *Second*, the status of legal title to a property sold at tax sale does not create or contribute to dangerous conditions associated with vacant buildings. The owner of property sold at tax sale retains his or her status as the owner until a certificate holder pays for the property and obtains a deed—which is no different from the status of an owner of vacant property that is subject to a mortgage foreclosure proceeding. *Third*, the assignment of a tax sale certificate, either before or after the entry of a judgment, does not create any "tax avoidance scheme." When the deed is recorded, the assignee taking title to the property—Ty Webb in this case—will have to pay recordation tax after paying the remaining bid surplus price, and any outstanding taxes, penalties, and interest. *See* TP §§ 12-102, 12-105.

Contrary to the "serious problems" foreshadowed by the Dissent, we see more opportunities for "mischief" if the tax sale statute provided for the vesting of fee simple title in a tax sale certificate holder upon the entry of a judgment alone—without conditioning the transfer of legal title upon the payment of the surplus bid purchase price to the owner, or the payment of post-judgment taxes, penalties, and interest to the tax collector.

54

1998)). Like the Court of Special Appeals, we determine that the certificate retains its value until the deed is executed and delivered. The tax deed creates a new and complete title in the property, "which bars or extinguishes all prior titles and encumbrances of private persons, and all equities arising out of them." *Lippert*, 366 Md. at 232 (quoting *Winter*, 155 Md. at 631). Until such time as the deed is executed and delivered, the tax sale certificate is not extinguished and is assignable pursuant to TP § 14-821(a).

### E. The Judgment Foreclosing the Right of Redemption Was Assignable

We similarly agree with the circuit court and the Court of Special Appeals that the judgment foreclosing the right of redemption was assignable. Again, the City's position is that, because the judgment vested fee simple title to real property in the certificate holder, it cannot be assigned because any subsequent transfer to fee simple title of property must occur via a deed. As discussed above, we reject the City's argument that the judgment vests fee simple title by operation of law since, upon the entry of the judgment, the certificate holder obtains equitable title to the property, or the legal *right* to obtain title. We agree with the Court of Special Appeals that the certificate holder's equitable interest in the property, which is evidenced by the judgment, is a chose in action. See Black's Law Dictionary (11th ed. 2019) (defining "chose in action" as "1. A proprietary right *in personam*, such as a debt owed by another person, a share in a joint-stock company, or a claim for damages in tort. 2. The right to bring an action to recover a debt, money or thing. 3. Personal property that one person owns but another person possesses, the owner being able to regain possession through a lawsuit[]"). Here, the judgment does not vest legal title to real property—it grants an equitable interest or the *right* to acquire legal title upon the

55

payment of the purchase price.  "In Maryland[,] it has long been held that a chose in action may be validly assigned."  *Medical Mut. Liability Inc. Soc. of Maryland v. Evans*, 330 Md. 1, 29 (1993) (citing *Adair v. Winchester*, 7 G. & J. 114, 117–18 (1835)).  We restated this principle in *Summers v. Freishtat*, 274 Md. 404, 407 (1975), noting that "a chose in action, whether arising in tort or ex contractu, is generally assignable[;]" and  "[t]he only limitation, in the absence of a contrary statutory provision, is that the right of action be of a sort which would survive the death of the assignor and pass to his personal representatives."[29]  We agree with the circuit court and the intermediate appellate court that the tax sale statute imposes no prohibition on the assignment of the judgment, and we decline to judicially supply a prohibition.

### F. The Circuit Court Did Not Err in Entering its Order Directing the City to Execute A Deed to the Assignee

For the reasons stated above, we hold that the circuit court correctly determined that the judgment did not extinguish the tax sale certificate, and that it was freely assignable. We similarly hold that the circuit court did not err in concluding that the judgment was assignable.  Here, Thornton Mellon executed a valid assignment, which assigned its interest in the certificate of sale and the judgment to Ty Webb.  Ty Webb, as the assignee of

---

[29] The Legislature has set forth the actions that survive the death of a party, including an "action in equity" where "the court can grant effective relief in spite of the death." Maryland Code Courts and Judicial Proceedings ("CJ") (1973, 2020 Repl. Vol., 2021 Supp.) § 6-401(c).  A circuit court has broad equitable jurisdiction in a tax sale proceeding "to give complete relief" under the statute "in accordance with the general jurisdiction and practice of the court[.]" TP § 14-834.  The relief that could be granted by the circuit court in the context of a tax sale would survive the death of a party—a situation, which of course, has no application here as we are dealing with government and business entities.

Thornton Mellon, prepared a tax deed containing all the necessary recitals reflecting the tax sale proceeding, tax account number, circuit court case number, and assignment in accordance with the requirements of the Tax-Property Article.  When the City refused to accept the assignment, Thornton Mellon filed a notice of substitution of parties, and Ty Webb, as the substitute plaintiff filed a motion for an order directing the City to issue a tax deed to Ty Webb, as the assignee.

Even if we had not concluded that the certificate of sale and judgment were assignable, we would nonetheless uphold the circuit court's entry of the order in this case. We agree with the Court of Special Appeals that the circuit court had revisory power over its judgment. *See* Maryland Code Courts and Judicial Proceedings (1973, 2020 Repl. Vol., 2021 Supp.) ("CJ") § 6-408 ("[f]or a period of 30 days after the entry of a judgment, or thereafter pursuant to a motion filed within that period, the court has revisory power and control over the judgment[]"); Maryland Rule 2-535(a) ("[o]n motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment[]");  *Maryland Bd. of Nursing v. Nechay*, 347 Md. 396, 408 (1997) (noting that it is "well settled in this State that, 'read together, the rules, the statute, and our decisions boil down to a dictate that for a period of thirty days from the entry of a law or equity judgment, a circuit court shall have unrestricted discretion to revise it'") (cleaned up).  "[T]he discretion reposed in the trial court is a discretion which must be exercised liberally, lest technicality triumph over justice."  *Nechay*, 347 Md. at 408 (internal

quotation marks and citations omitted).[30] "The exercise of the court's discretion is not triggered exclusively, our cases make clear, by a motion filed by one of the parties. The court may act to revise its judgment *sua sponte*." *Id.* at 409. Here, the circuit court was well within its discretion, under its revisory power over its judgment, to permit the assignee to be substituted as a party, to consider the substituted plaintiff's motion filed within 30 days of the date of the judgment, and to order the City to issue a tax deed.

---

[30] In arguments that were not presented to the circuit court, the City argues that, even if the tax sale certificate or judgment were assignable, Thornton Mellon's purported assignment was procedurally defective. The City contends that the assignment was required to be recorded in the land records in the same manner as a mortgage assignment. In support of this position, the City relies upon TP § 14-821(a), which states that "[t]he assignment of [a] certificate of sale *may* be made in accordance with the provisions of law relating to the short assignment of mortgages." (Emphasis added). With respect to the assignment of judgments, the City directs us to Maryland Rule 2-624, which states:

> When a judgment has been assigned in writing by the judgment holder, the assignment may be filed in the court where the judgment was entered and in any court where it has been recorded. When an assignment is filed, the judgment may thereafter be enforced in the name of the assignee to the extent of the assigned interest.

The City contends that the assignment was not filed in the land records, and the judgment was not filed in the circuit court in accordance with Maryland Rule 1-322(a) (stating that "filing" means "filing [] with the clerk of the court" or a judgment of the court, in the latter case, however, the judgment must "note on the item the date the judge accepted it for filing and forthwith transmit the item to the office of the clerk[]"). To the extent that the assignment of the certificate of sale or judgment suffered from any procedural technicality related to Ty Webb's attaching the assignment as an exhibit to its pleading (as opposed to filing it as a separate document), we reject such a technicality here as negating the circuit court's authority to exercise its revisory power of the judgment and direct the City to execute the tax deed. The circuit court had a copy of the assignment, which was attached to Ty Webb's motion. The City had notice of the assignment and was not prejudiced by the assignment being attached to a pleading as opposed to being filed as a separate document. The circuit court clearly accepted Ty Webb's substitution in the case, considered the assignment, and entered an order consistent with its revisory power over the judgment. The circuit court acted within its authority.

58

## III

## Conclusion

For the reasons set forth above, we hold that the circuit court did not err in ordering the City to execute a tax sale deed conveying legal title to the property to Thornton Mellon's assignee, Ty Webb.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT TO BE PAID BY PETITIONER, MAYOR & CITY COUNCIL OF BALTIMORE.**

Circuit Court for Baltimore City
Case No. 24-C-18-001043
Argued: October 7, 2021

IN THE COURT OF APPEALS

OF MARYLAND

No. 6

September Term, 2021

_____

MAYOR AND CITY COUNCIL OF
BALTIMORE

v.

THORNTON MELLON, LLC, ET AL.

_____

*Getty, C.J.
*McDonald
Watts
Hotten
Booth
Biran
Battaglia, Lynne A. (Senior
Judge, Specially Assigned),

JJ.

_____

Dissenting Opinion by Watts, J., which Biran
and McDonald, JJ., join.

_____

Filed: April 28, 2022

*Getty, C.J., and McDonald, J., now Senior
Judges, participated in the hearing and
conference of this case while active members of
this Court. After being recalled pursuant to Md.
Const., Art. IV, § 3A, they also participated in
the decision and adoption of this opinion.

Respectfully, I dissent. This case involves a basic question of statutory interpretation and the need to not disregard the plain language of statutes. Md. Code Ann., Tax-Prop. (1986, 2019 Repl. Vol.) ("TP") § 14-844(b) applies to tax sale cases and states that, "[i]f the court finds for the plaintiff, the judgment vests in the plaintiff an absolute and indefeasible title in fee simple in the property[.]" Under the plain language of the statute, as soon as a circuit court issues a judgment foreclosing the right of redemption, the tax sale buyer becomes the fee simple owner of the property by operation of TP § 14-844(b) even though the tax collector has not yet executed a deed for the tax sale buyer.

In other words, once a circuit court issues a judgment foreclosing the right of redemption, title immediately passes to the tax sale buyer by operation of law—*i.e.*, by operation of TP § 14-844(b)—and the only method for the tax sale buyer to transfer the property afterward is for the tax sale buyer to execute a deed for the transferee and have it recorded pursuant to Md. Code Ann., Real Prop. (1974, 2015 Repl. Vol.) ("RP") § 3-101(a). It would render the plain language of TP § 14-844(b) and RP § 3-101(a) meaningless to allow a tax sale buyer, after the circuit court has issued a judgment foreclosing the right of redemption, to transfer the property by assigning the judgment and the tax sale certificate.[1] Simply put, after a circuit court issues a judgment foreclosing the

---

[1]TP § 14-844(b) provides in its entirety:

If the court finds for the plaintiff, the judgment vests in the plaintiff an absolute and indefeasible title in fee simple in the property, free and clear of all alienations and descents of the property occurring before the date of the judgment and encumbrances on the property, except taxes that accrue after

right of redemption, the judgment and the tax sale certificate are not assignable.

This conclusion is supported by both the plain language and the legislative history of TP § 14-844(b). Under the plain language of TP § 14-844(b), a judgment foreclosing the right of redemption vests fee simple title in the tax sale buyer. To read into the language of TP § 14-844(b) that, upon entry of judgment, the tax sale buyer (or tax sale certificate holder) obtains only equitable title to the property and not legal fee simple title would be to add language to the statute and contravene the intent of the General Assembly.[2]

It was not always the case that a judgment foreclosing the right of redemption vested fee simple title in the tax sale buyer. Instead, statutes that existed before TP § 14-844(b), which applied to tax sales of properties in jurisdictions other than Baltimore City, set forth different methods of determining when fee simple title vested in a tax sale buyer. In some instances, prior to TP § 14-844(b), a deed executed by a tax collector for a tax sale buyer

---

the date of sale and easements of record and any other easement that may be observed by an inspection of the property to which the property is subject.

RP § 3-101(a) provides: "Except as otherwise provided in this section, no estate of inheritance or freehold, declaration or limitation of use, estate above seven years, or deed may pass or take effect unless the deed granting it is executed and recorded."

[2] According to Black's Law Dictionary, the terms "fee simple," "fee-simple title," and "estate in fee simple" all mean "[a]n interest in land that, being the broadest property interest allowed by law, endures until the current holder dies without heirs[.]" *Fee Simple*, Black's Law Dictionary (11th ed. 2019). Consistently, we have stated that one definition of "a fee simple estate" is "the greatest estate which one may enjoy in property and is in common language an absolute and unqualified ownership of the interests involved." State Roads Comm'n v. Johnson, 222 Md. 493, 497-98, 161 A.2d 444, 447 (1960) (cleaned up). We have also stated that one definition of "[a] fee-simple estate" is "an absolute title or estate in lands wholly unqualified by any reversion, reservation, condition, or limitation or possibility of any such thing." New Cathedral Cemetery v. Browning, 153 Md. 408, 138 A. 258, 260 (1927) (cleaned up).

vested fee simple title in the tax sale buyer.  See, e.g., 1898 Md. Laws 1234 (Ch. 526).  By contrast, in other instances before TP § 14-844(b), a tax sale buyer's payment of the purchase money vested fee simple title in a tax sale buyer.  See, e.g., 1880 Md. Laws 330 (Ch. 2.7).  Still other precursors of TP § 14-844(b) stated that fee simple title vested in the tax sale buyer unless the original owner redeemed the property within the limitations period.  See, e.g., 1888 Md. Laws 580-81 (Ch. 339).

In 1941, the General Assembly adopted the current method of determining when fee simple title vests in a tax sale buyer as to tax sales of properties in Baltimore City by enacting a predecessor of TP § 14-844(b) that stated: "If the court shall find for the plaintiff, the decree shall vest in the plaintiff an absolute and indefeasible title in fee simple in the property[.]"  1941 Md. Laws 923, 940-41 (Ch. 540, S.B. 428).  In 1943, the General Assembly included the same language in the statute that applied to tax sales of properties everywhere in Maryland.  See 1943 Md. Laws 1338, 1354 (Ch. 761, S.B. 89).  The General Assembly eventually moved this language to Md. Code Ann., Tax-Prop. (1986) § 14-844 with only stylistic changes so that it read as TP § 14-844(b) does: "If the court finds for the plaintiff, the judgment vests in the plaintiff an absolute and indefeasible title in fee simple in the property[.]"  1985 Md. Laws 559 (Pt. 1, Ch. 8, S.B. 1) (some capitalization omitted).

In 1943, the General Assembly could have, as it had done before, made it so that the deed executed by a tax collector for the tax sale buyer vested fee simple title in a tax sale buyer.  See, e.g., 1898 Md. Laws 1234.  Instead, however, the General Assembly made it the law of Maryland that the judgment foreclosing the right of redemption vests fee simple title in the tax sale buyer.  See 1943 Md. Laws 1354.  If the General Assembly had intended

to require that a deed be executed by a tax collector to vest fee simple title in a tax sale buyer, the General Assembly would have done so. The circumstance that the General Assembly deliberately chose not to do so demonstrates that the General Assembly intended for TP § 14-844(b) to mean exactly what it says—the judgment foreclosing the right of redemption, not a deed executed by a tax collector, vests fee simple title in the tax sale buyer.[3] Under the plain language of TP § 14-844(b), as soon as the circuit court issues the judgment foreclosing the right of redemption, fee simple title immediately vests in the tax sale buyer even though the tax collector has not yet executed a deed to that effect.

If a tax sale buyer wants to transfer the property after the circuit court issues a judgment foreclosing the right of redemption, the tax sale buyer must use the usual method of doing so—*i.e.*, execute a deed for the transferee and have the deed recorded pursuant to RP § 3-101(a). The legislative history of TP § 14-844(b) makes clear that the General Assembly never contemplated allowing a tax sale buyer, after the circuit court has issued a judgment foreclosing the right of redemption, to transfer the property by assigning the judgment and the tax sale certificate.

Allowing such an assignment would be inconsistent with not only the plain language and legislative history of TP § 14-844(b), but also the general design of the statute. Despite

---

[3]Just as, under TP § 14-844(b), the judgment of foreclosure vests in a plaintiff an absolute and indefeasible title in fee simple to a property, its predecessor in 1943 did the same. In both versions of the statutory scheme, another provision sets forth the requirement of a deed to memorialize the passage of title. In the 1943 version of the statute, and in TP § 14-844(b), the General Assembly used clear and distinct language stating that the judgment or decree shall vest in the plaintiff an absolute and indefeasible title in fee simple in the property. See 1943 Md. Laws 1338, 1354 (Ch. 761, S.B. 89).

the general principle that a judgment is assignable, a judgment foreclosing the right of redemption is not. In a judgment foreclosing the right of redemption, the tax sale buyer is the only entity that the circuit court orders to be vested with fee simple title to the property. The tax sale buyer is the only entity that the circuit court orders the supervisor of assessments to enroll as the fee simple owner of the property. And, the tax sale buyer is the only entity that the circuit court orders the tax collector to execute a deed for. Once the circuit court issues a judgment foreclosing the right of redemption, the tax sale certificate can no longer be assigned because it no longer has any value, as it has served its only purpose—*i.e.*, memorializing the tax sale buyer's inchoate interest in the property until the tax sale buyer became the fee simple owner of the property. Nor can the judgment be assigned, as, by operation of law, the tax sale buyer has become the fee simple owner of the property.

Other parts of the statutory scheme to which TP § 14-844(b) belongs support the conclusion that, after a circuit court issues a judgment foreclosing the right of redemption, the judgment and the tax sale certificate are not assignable. TP § 14-824(a) states that, generally, where no private entity buys a property at a tax sale, the governing body of the county or other taxing agency must do so. TP § 14-824(c) states that "[t]he governing body of the county . . . and other taxing agency have the same rights and remedies with regard to the property as other purchasers, including the right to foreclose the right of redemption." And, TP § 14-825 states that, "[w]hen the governing body of a county or other taxing agency has purchased any property at a tax sale, it may sell and assign the certificate of sale relating to the property or after foreclosure sell the property."

- 5 -

The General Assembly's choice of words in the plain language of TP § 14-825 is telling. Under the language of TP § 14-825, a county or taxing agency that has purchased a property at tax sale may sell and assign the certificate of sale relating to the property. This language clearly applies to actions that the county or taxing agency may take before foreclosure. Under TP § 14-825, "after foreclosure[,]" the county or taxing agency may sell the property. The plain language of TP § 14-825 makes no mention of the ability of a county or taxing agency to sell or assign a certificate of sale after foreclosure, or of the ability to assign a judgment of foreclosure.

The plain language of TP § 14-825 leads to the conclusion that the General Assembly intended for a tax sale certificate to be sold or assigned before the entry of a judgment of foreclosure, not after. At that point, the tax sale buyer immediately becomes the fee simple owner of the property by operation of TP § 14-844(b), the tax sale certificate becomes no longer assignable, and the only way for the tax sale buyer to transfer the property is to "sell the property[,]"—which requires executing a deed for the transferee and having it recorded pursuant to RP § 3-101(a). TP § 14-825. Given that under TP § 14-824(c) a taxing agency has "the same rights and remedies" as any other tax sale buyer, the principle confirmed by the plain language of TP § 14-825—*i.e.*, that a tax sale certificate is not assignable after a trial court issues a judgment foreclosing the right of redemption—applies with equal force where the tax sale buyer is a private entity rather than a taxing agency. Concluding otherwise would give a private entity greater rights as a tax sale buyer than a taxing agency, which would be inconsistent with the plain language of TP § 14-

- 6 -

824(c).[4]

TP § 14-825 is not the only part of the statutory scheme that reinforces the conclusion that, after a circuit court issues a judgment foreclosing the right of redemption, the judgment and the tax sale certificate are not assignable. TP § 14-833(c)(1) sets forth a two-year limitations period for tax sale cases, stating that "[t]he certificate is void unless a proceeding to foreclose the right of redemption is filed within 2 years of the date of the certificate of sale." In other words, under TP § 14-833(c)(1), where no tax sale case is initiated within two years of the tax collector's issuance of the tax sale certificate, the tax sale certificate becomes void. TP § 14-833(c)(1) makes clear that the only purpose of holding a tax sale certificate is to ultimately obtain a judgment foreclosing the right of redemption. Just as a tax sale certificate becomes void by operation of TP § 14-833(c)(1) where no tax sale case is timely initiated, a tax sale certificate loses its value by operation of TP § 14-844(b) where the circuit court issues a judgment foreclosing the right of redemption. In both instances, the tax sale certificate no longer serves any purpose, no longer has any value, and can no longer be assigned. Simply put, once there is a judgment

_____

[4]Whether TP § 14-825 applies only where, under TP § 14-824(a), a taxing agency was required to buy a property at a tax sale because no private entity did so (which was not the case here) is of no moment. Regardless of the circumstances of any particular case, TP § 14-825 confirms what the plain language and legislative history of TP § 14-844(b) make clear—*i.e.*, that, after a circuit court issues a judgment foreclosing the right of redemption, the county or taxing agency may sell the property. TP § 14-825 does not authorize the tax sale certificate or judgment to be assigned after foreclosure. There is no rational explanation for the proposition that the General Assembly intended to not authorize the assignment of a tax sale certificate by a taxing agency after foreclosure while allowing such an assignment by a private entity. The creation of such a double standard would violate TP § 14-824(c), which states that a taxing agency has "the same rights and remedies" as any other tax sale buyer.

foreclosing the right of redemption, there is nothing left to assign.

This conclusion is consistent with TP § 14-821(a), which provides that, generally, "any certificate of sale executed and delivered by the collector to the purchaser is assignable and an assignment of the certificate of sale vests in the assignee, or the legal representative of the assignee, all the right, title, and interest of the original purchaser." Respondents are mistaken in reasoning that a tax sale certificate can be assigned after a judgment foreclosing the right of redemption on the ground that TP § 14-821(a) does not include an express prohibition of such an assignment. This is not persuasive because the plain language of TP § 14-844(b), its legislative history, and TP §§ 14-825 and 14-833(c)(1) demonstrate that the General Assembly intended for a tax sale certificate not to be assignable after the circuit court issues a judgment foreclosing the right of redemption. The silence of TP § 14-821 as to a post-judgment assignment of tax sale certificates does not indicate that such an assignment is permissible. If the General Assembly had intended to allow such an unorthodox procedure for transferring property, it would have said so in TP § 14-821. Likewise, if the General Assembly had intended to allow a tax sale buyer to assign a judgment foreclosing the right of redemption, it would have said so in TP § 14-821 or another part of the statutory scheme.

In Fish Market Nominee Corp. v. G.A.A., Inc., 337 Md. 1, 7, 13, 650 A.2d 705, 707-08, 711 (1994), a case in which assignments of tax sale certificates occurred before, not after, the circuit court issued a judgment foreclosing the right of redemption, we stated that TP § 14-821 "freely permits assignments of tax sale certificates." Fish Market does not support the notion that TP § 14-821(a) means that, after a circuit court has issued a

judgment foreclosing the right of redemption, the tax sale buyer can assign the judgment and the tax sale certificate. Fish Market undermines that thought by providing an illustration of the proper way for a tax sale buyer to transfer the property—namely, by assigning the tax sale certificate before, not after, the circuit court issues a judgment foreclosing the right of redemption. Assigning a tax sale certificate before a tax sale foreclosure action has been initiated in a circuit court (as was done in Fish Market) does not necessitate any court filing. See id. at 7, 650 A.2d at 707.

Where a tax sale certificate is assigned after a tax sale action has been initiated in a circuit court, the assignor must file a motion to substitute the assignee for itself as the plaintiff (as was also done in Fish Market). See id. at 7, 650 A.2d at 708. The bottom line is that a tax sale certificate can be assigned any number of times, whether before or after a tax sale foreclosure action has been initiated in a circuit court—up until the circuit court issues a judgment foreclosing the right of redemption. At that point, the plaintiff (*i.e.*, the holder of the tax sale certificate at the time) becomes the fee simple owner of the property by operation of TP § 14-844(b), and the tax sale certificate becomes unassignable. Nothing in TP § 14-821 states or implies that tax sale certificates can always be assigned under every conceivable circumstance in perpetuity, and in particular, nothing states that tax sale certificates may be assigned after entry of a judgment foreclosing the right of redemption.

The record shows that Thornton Mellon had ample opportunity to assign the tax sale certificate to Ty Webb and move to substitute Ty Webb for itself as the plaintiff before the circuit court issued the judgment foreclosing the right of redemption, as was done in Fish Market. See id. at 7, 650 A.2d at 708. According to the docket entries, in the more-than-

sixteen-month span between the filing of the complaint and the circuit court's issuance of the judgment foreclosing the right of redemption, Thornton Mellon requested a judgment foreclosing the right of redemption three times—once in the complaint, another time in a motion for an order foreclosing the right of redemption, and a third time in a renewal of that motion. The circuit court denied the first two requests before ultimately issuing the judgment foreclosing the right of redemption. In addition to repeatedly requesting a judgment foreclosing the right of redemption, Thornton Mellon filed motions at various times, including a motion for waiver of alternative service, a motion for the circuit court to take action in the matter, and a motion to dismiss a party.

Yet, Thornton Mellon did not attempt to assign to Ty Webb the judgment foreclosing the right of redemption and the tax sale certificate until one day after the circuit court issued the judgment. These circumstances contradict any view that Thornton Mellon was paying little attention to the case and was caught off-guard by the judgment foreclosing the right of redemption. To the contrary, Thornton Mellon was actively involved in the case from start to finish and repeatedly sought a judgment foreclosing the right of redemption. Thornton Mellon had the chance, but failed, to assign the tax sale certificate and move to substitute Ty Webb as the plaintiff in the action before, not after, the circuit court issued the judgment foreclosing the right of redemption.

In the circuit court, Thornton Mellon's counsel stated that Thornton Mellon did not assign the tax sale certificate and move to substitute Ty Webb as the plaintiff because it was uncertain when the circuit court would issue the judgment foreclosing the right of redemption. This explanation is not an excuse for Thornton Mellon's failure to assign the

tax sale certificate and move to substitute Ty Webb as the plaintiff before, not after, the circuit court issued the judgment foreclosing the right of redemption. Far from being burdensome or onerous, doing so would have been a simple matter, as demonstrated by the circumstances in Fish Market, and doing so was required under the plain language of TP § 14-844(b).

Similarly, there is little weight to be given to the reasoning that a tax sale certificate and a judgment foreclosing the right of redemption can be assigned after the judgment because, even after the judgment, there remain steps that a tax sale buyer must take before the tax collector can execute a deed for the buyer—namely, paying any remaining sums due, including any balance of the purchase price, taxes, interest, and penalties, as required under TP §§ 14-818(a)(2) and 14-847(a)(1). The circumstance that the tax sale buyer must make certain payments before the tax collector executes a deed for the plaintiff does not negate the tax sale buyer's status as the new owner of the property. By way of analogy, up until the circuit court issues the judgment foreclosing the right of redemption, the original owner of the property remains exactly that—the owner of the property, even though the original owner has not kept current with tax payments for the property. This is made clear by TP § 14-827, which states that "[t]he owner or other person that has an estate or interest in the property sold by the collector may redeem the property at any time until the right of redemption has been finally foreclosed under the provisions of this subtitle." Any money that the original property owner owes, the tax lien on the property, and the tax sale do not deprive the original owner of ownership of the property. It is not until the circuit court issues the judgment foreclosing the right of redemption that the original owner loses

ownership. At that point, by operation of TP § 14-844(b), title passes from the original owner to the tax sale buyer. The circumstance that the tax sale buyer may need to make payments to the local jurisdiction does not deprive the owner of fee simple title.

In this case, Respondents relied, in part, on RP § 3-101(a) and Lippert v. Jung, 366 Md. 221, 242, 783 A.2d 206, 218 (2001), a tax sale case in which we stated: "[T]here has been a foreclosure of the right of redemption, and title has been conveyed to [the tax sale buyer]s by proper deed." But, neither RP § 3-101(a) nor Lippert is of help to the Respondents. Like Fish Market, Lippert did not involve a tax sale buyer that, like Thornton Mellon, purported to assign a judgment foreclosing the right of redemption and a tax sale certificate after the circuit court issued the judgment. Nor did Lippert involve the question of when fee simple title vests in a tax sale buyer.

Instead, Lippert involved individuals who claimed to be entitled to a property by virtue of adverse possession even though, during the relevant time period, the property was sold at a tax sale and a trial court issued a judgment foreclosing the right of redemption. See Lippert, 366 Md. at 223-24, 783 A.2d at 207. In Lippert, we concluded that the judgment foreclosing the right of redemption was fatal to the individuals' claim for adverse possession. See id. at 245, 783 A.2d at 220. We did not mention TP § 14-844 in Lippert, let alone discuss the principle that, under TP § 14-844(b), the judgment foreclosing the right of redemption vests fee simple title in the tax sale buyer.[5]

_____

[5]In Lippert, this Court concluded that the judgment foreclosing the right of redemption was fatal to the individuals' claim for adverse possession. See 366 Md. at 245, 783 A.2d at 220. In Lippert, in discussing the applicable law, the Court cited cases in

In addition to relying on Fish Market and Lippert, Respondents cite cases involving mortgage foreclosure sales. These cases are distinguishable because there is no statutory counterpart to TP § 14-844(b) that applies to mortgage foreclosure sales. That a purchaser at a mortgage foreclosure sale may have an equitable interest in the property prior to the court's ratification of the sale and the passing of title at the time of the recording of a mortgage or deed of trust is not analogous to the manner in which title passes in a tax sale under TP § 14-844(b). RP § 7-105(c) provides that a mortgage foreclosure sale, "after final ratification by the court and grant of the property to the purchaser on payment of the purchase money, . . . operates to pass all the title which the borrower had in the property at the time of the recording of the mortgage or deed of trust." By contrast, TP § 14-844(b) specifically provides that a tax sale foreclosure judgment "vests in the plaintiff an absolute and indefeasible title in fee simple in the property[.]"

Insofar as RP § 3-101(a) is concerned, there is no conflict or inconsistency between TP § 14-844(b) and the language of RP § 3-101(a), which we have interpreted to mean that "legal title to land . . . does not pass, other than by operation of law, until a deed is properly executed and recorded." Standard Fire Ins. Co. v. Berrett, 395 Md. 439, 455, 910

---

which we stated that a tax deed conveys fee simple title to the tax sale buyer. See id. at 232, 783 A.2d at 212 (quoting Winter v. O'Neill, 155 Md. 624, 631, 142 A. 263, 266 (1928)); Lippert, 366 Md. at 234-35, 783 A.2d at 213-14 (citing Cooper v. Holmes, 71 Md. 20, 30, 17 A. 711, 713 (1889) and quoting McMahon v. Crean, 109 Md. 652, 665, 71 A. 995, 997 (1909) and Wagner v. Goodrich, 148 Md. 318, 323, 129 A. 364, 365 (1925)). Notably, all of the above cases were decided before 1943, when the General Assembly stated that "[i]f the court shall find for the plaintiff, the decree shall vest in the plaintiff an absolute and indefeasible title in fee simple in the property[.]" 1943 Md. Laws 1354.

A.2d 1072, 1082 (2006) (cleaned up). With respect to tax sale cases, as soon as a circuit court issues a judgment foreclosing the right of redemption, legal title to the property immediately passes to the tax sale buyer by operation of law—specifically, by operation of TP § 14-844(b). To the extent that there is any question about whether TP § 14-844(b) or RP § 3-101(a) prevails, the former does because it is more specific than the latter. There is a "long-recognized principle of statutory construction that a specific statutory provision governs over a general one." Andrews & Lawrence Pro. Servs., LLC v. Mills, 467 Md. 126, 155, 223 A.3d 947, 964 (2020) (cleaned up).

Next, the circumstance that the judgment foreclosing the right of redemption vests fee simple title in the tax sale buyer does not make the deed executed by the tax collector for the tax sale buyer under TP § 14-847(a) superfluous. In other words, that TP § 14-847(a) provides that the tax collector must execute a deed for the tax sale buyer does not negate the tax sale buyer's status as the owner of the property. The deed executed by the tax collector for the tax sale buyer serves multiple purposes. One of the obvious purposes is that there must be a deed so that it can be recorded among the land records of the jurisdiction. This allows any interested party to see who owns the property. The deed serves as an additional method of proving that the tax sale buyer owns the property.

In addition, Respondents are incorrect in asserting that a judgment foreclosing the right of redemption is an assignable chose in action. This argument is based on the faulty assumption that the tax sale buyer acquires only an equitable interest in the property upon entry of a judgment of foreclosure, not fee simple title. Black's Law Dictionary provides three definitions of "chose in action": "[a] proprietary right in personam, such as a debt

- 14 -

owed by another person, a share in a joint-stock company, or a claim for damages in tort";

"[t]he right to bring an action to recover a debt, money, or thing"; and "[p]ersonal property

that one person owns but another person possesses, the owner being able to regain

possession through a lawsuit." *Chose in Action*, Black's Law Dictionary (11th ed. 2019).

A judgment foreclosing the right of redemption vests legal title, *i.e.*, fee simple title, in the

tax sale buyer and, as such, does not create an interest that would fall within any of the

definitions of a chose in action.

Respondents are also mistaken in reasoning that, after the circuit court issued the

judgment foreclosing the right of redemption, Thornton Mellon could assign the judgment

and the tax sale certificate to Ty Webb because, in the judgment, the circuit court

"ORDERED that the Director of Finance shall execute and deliver Deed to the Plaintiff,

his successors and assigns[.]" This language simply meant that, after the Director of

Finance executed a deed for Thornton Mellon and delivered it, Thornton Mellon, just like

any other property owner, could transfer the property to a successor or an assignee. This

language means that Thornton Mellon could transfer the property by executing a deed for

a transferee pursuant to RP § 3-101(a). Significantly, the circuit court did not order that

the Director of Finance would execute and deliver Deed to the "Plaintiff, *or* his successors

or assigns." In the judgment foreclosing the right of redemption, the circuit court simply

referred to the plaintiff's potential future successors and assigns in the interest of

completeness, as multiple legal documents and statutes do. For instance, TP § 14-844(a)

states that a judgment foreclosing the right of redemption "is final and conclusive on the

defendants"—*i.e.*, the original property owners—"their heirs, devisees, and personal

representatives and they or any of their heirs, devisees, executors, administrators, assigns, or successors in right, title, or interest are bound by the judgment as if they had been named in the proceedings and personally served with process." In referring to Thornton Mellon's "successors and assigns" in the judgment foreclosing the right of redemption, the circuit court did not purport to—and, indeed, could not—override the plain language of TP § 14-844(b), under which Thornton Mellon, after the circuit court issued the judgment, could not assign the judgment or the tax sale certificate.

As the City points out, it would cause serious problems to allow a tax sale buyer, after a circuit court has issued a judgment foreclosing the right of redemption, to transfer property by assigning the judgment and the tax sale certificate. One problem would be causing land records to be inaccurate and making it difficult, if not impossible, to determine who owns a particular property. An assignment of a judgment foreclosing the right of redemption and a tax sale certificate would not be required to be recorded among the land records of the jurisdiction, and the assignor would not be required to execute a deed for the assignee. This would lead to inconsistent property records and title searches that would yield incorrect results. The difficulty in identifying owners of property would inhibit both taxing agencies seeking to collect property taxes and private individuals and organizations seeking to buy properties.[6] More importantly, the difficulty in identifying owners of

---

[6]Respondents argued that the land records of a jurisdiction might also become inaccurate if the circuit court issued a judgment foreclosing the right of redemption but the tax sale buyer neither assigned the judgment and the tax sale certificate nor made the payments necessary for the tax collector to execute a deed for the tax sale buyer. In such an instance, though, the name of the fee simple owner of the property—*i.e.*, the tax sale

property would undoubtedly, as pointed out by the City before the circuit court, exacerbate the issue of vacant buildings in Baltimore City, leading to blight and dangerous conditions for firefighters and people in the community.

Loss of tax revenue is another problem that would result from allowing a tax sale buyer, after a circuit court has issued a judgment foreclosing the right of redemption, to transfer the property by assigning the judgment and the tax sale certificate. As the City's counsel observed before the circuit court, a tax sale buyer may have second thoughts and no longer want the property for any number of reasons. Perhaps the property is damaged and loses value due to a flood or fire, possibly resulting in the property becoming underwater—*i.e.*, worth less than the money owed on the property. Whatever the reason for the tax sale buyer's cold feet, the tax sale buyer could walk away from its obligations as a property owner and avoid the recordation and transfer taxes that it would have otherwise owed by simply passing the property to an assignee. The assignee would owe little in taxes if the amount of consideration was nominal—as was the case here, where Thornton Mellon purported to assign to Ty Webb the judgment foreclosing the right of redemption and the tax sale certificate for just $1. The City is correct in noting that allowing assignments like the one in this case would be ripe for mischief and could be

---

buyer—would remain on the judgment foreclosing the right of redemption and the tax sale certificate. A taxing agency could easily determine who owns the property by briefly reviewing records and seeing that the tax sale buyer bought the property at the tax sale. By contrast, if the circuit court issued a judgment foreclosing the right of redemption and the tax sale buyer not only failed to make the payments necessary for the tax collector to execute a deed for the tax sale buyer but also assigned the judgment and the tax sale certificate, neither the taxing agency nor an interested party would necessarily be able to determine who owns the property or find out about the assignment.

misused as a tax-avoidance scheme.

Far from engaging in a money-making tax scheme or trying "to get double taxes out of Respondents[,]" as they allege, the City is simply attempting to adhere to the plain language of TP § 14-844(b) as written. Doing so would help to ensure that land records remain accurate and that there are no loopholes as to tax sale cases and would serve as a safeguard against an increase in vacant properties in the community. Because the Majority has decided to allow assignments like the one in this case, it may be that the General Assembly will want to review the issue of whether tax sale certificates and judgments are assignable after foreclosure. Such a review could serve to protect local jurisdictions from the numerous risks of danger associated with an increased number of vacant buildings by making explicit what the plain language of TP § 14-844(b), its legislative history, and TP §§ 14-825 and 14-833(c)(1) already demonstrate—*i.e.*, that a judgment foreclosing the right of redemption is not assignable and that a tax sale certificate is no longer assignable after a circuit court issues the judgment.

The use of a trial court's revisory power under Maryland Rule 2-535(a) to theoretically permit the substitution of a party, *i.e.*, the assignee, after the entry of a judgment of foreclosure is not a basis on which to affirm the circuit court's order in this case. First of all, even though it was a theory espoused by the Court of Special Appeals, that did not happen in this case. Maryland Rule 2-535(a) was not used to revise the judgment of foreclosure by adding Ty Webb as a party nor would it have been an appropriate use of the Rule.

Maryland Rule 2-535(a) states in relevant part that, "[o]n motion of any party filed

within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under Rule 2-534." Maryland Rule 2-534 provides:

> In an action decided by the court, on motion of any party filed within ten days after entry of judgment, the court may open the judgment to receive additional evidence, may amend its findings or its statement of reasons for the decision, may set forth additional findings or reasons, may enter new findings or new reasons, may amend the judgment, or may enter a new judgment. A motion to alter or amend a judgment may be joined with a motion for new trial. A motion to alter or amend a judgment filed after the announcement or signing by the trial court of a judgment but before entry of the judgment on the docket shall be treated as filed on the same day as, but after, the entry on the docket.

A trial court's discretion under Maryland Rule 2-535(a) "to revise an unenrolled judgment is broad[,]" but subject to appellate review. Dixon v. Ford Motor Co., 433 Md. 137, 157, 70 A.3d 328, 339-40 (2013) (citation omitted). "The purpose of allowing that discretion, which informs any limits to it, is to ensure that technicality does not triumph over justice." Id. at 157, 70 A.3d at 157 (cleaned up). Although a trial court's discretion under the Rule has been described as broad, it does not appear that Maryland Rule 2-535(a) has ever been used in Maryland to revise a judgment to substitute a party. At any rate, using Maryland Rule 2-535(a) in this manner would be a band-aid remedy that would not work in every case as there is no guarantee that each and every tax sale buyer would seek to revise a judgment to substitute an assignee as a party (which was not done in this case) nor is there any guarantee that, if sought, a trial court would ever grant such a motion.

Equally important, the principle that, after a judgment of foreclosure, tax sale certificates and judgments are not assignable under TP § 14-844(b) is not affected by

Maryland Rule 2-535(a).  In other words, the potential use of Maryland Rule 2-535(a) does not negate the operation of TP § 14-844(b) and is not a universal remedy.  From my perspective, it is not reasonable to conclude that assignments of tax sale certificates and judgments should be permitted after entry of a judgment of foreclosure because the tax sale buyer could potentially request that the judgment be revised to substitute an assignee as a party to a case.  The use of the circuit court's revisory power under Maryland Rule 2-535(a) for this purpose would be nothing more than a way for the tax sale buyer to cut out the aspect of having to transfer the property by deed to an assignee after the judgment of foreclosure is issued.  In other words, using a trial court's revisory power under Maryland Rule 2-535(a) in this manner would allow tax sale buyers to work an end run around the requirements of selling a property and paying the costs associated with executing and recording a deed and would still contribute to the risks of danger associated with an increase in vacant properties.[7]

In sum, I would hold that, after a circuit court issues a judgment foreclosing the right of redemption, the tax sale buyer cannot assign the judgment or the tax sale certificate.  As such, I would reverse the judgment of the Court of Special Appeals.

For the above reasons, respectfully, I dissent.

---

[7]It would not do to make light of the view that allowing the assignment of tax sale certificates and judgments foreclosing the right of redemption may result in unclear chains of title and an increase in vacant properties in Baltimore City.  The circumstance that there is no requirement that, if permitted, such assignments be recorded through any filing with the circuit court or the City indicates that there would be no way to keep track of the assignments and the purported owners of property in Baltimore City.  It is not prudent to minimize the serious problems that could develop as a result of such assignments.

Judge Biran and Judge McDonald have authorized me to state that they join in this opinion.